In the Matter of the Estate of THERESA STUTZER, Deceased.

Surrogate's Court, Kings County, September 23, 1935.

*Wingate & Cullen*, for the petitioner.

*Beam & Cullen* [*Edward I. Cullen* of counsel], for the respondent Annie Tietzel, as administratrix, etc., of Hans Tietzel, deceased.

*James S. Price*, for the respondents Ernest A. Tietzel and another.

WINGATE, S. The question of interpretation here propounded concerns the remainder devolution of the principal of the trust of which testatrix's daughter Ida Tietzel, was the primary life tenant.

The paragraph in question reads: " Upon the death of my said daughter in case my granddaughter Anna Tietzel shall be alive, to pay the net income to her for life. Upon the death of said granddaughter, the principal to be equally divided into as many shares as my said daughter shall leave children or grandchildren (Grandchildren to take a parent's share) and to pay a share to such children or grandchildren. The share of my grandson Hans Tietzel to be paid however to his daughter Marjorie."

The pertinent necrology is as follows: At the death of the testatrix in 1912 she was survived by her daughter, Ida, and by four grandchildren, Anna, who is named as the second life tenant of the trust, Hans, Elsa and Ernest and by a great-granddaughter, Marjorie, who is named as the distributee of Hans' share of the remainder. Marjorie was the first to die, her demise occurring on November 15, 1917. She died intestate, unmarried and without children or descendants, her sole next of kin being her father, Hans. Ida, the daughter of testatrix and primary life tenant of the trust, died on August 28, 1929, survived by all four of her children. Hans died on March 12, 1930, and finally Anna, the second life tenant, died on February 28, 1934, thereby terminating the trust.

The claimants to portions of the remainder are Elsa and Ernest, the only surviving children of Ida, the administratrix of Anna and the administratrix of Hans.

The issue litigated is as to whether the remainders of the trust are vested or contingent, and respecting the time when vesting took place.

Certain of the parties feel impelled to criticize the will as ineptly drafted, but, in the opinion of the court, this is largely due to the fact that the language employed lends but imperfect support to their contentions. It is their position that the remainder gift is to a class, which, unquestionably, is at least partially a fact. They claim, however, that the time as of which the membership of that class should be determined is as of the death of the secondary life tenant, Anna, the granddaughter of the decedent, in spite of the fact that the will plainly reads that division shall be made " into

as many shares as my said *daughter*," whose primary life estate is erected by the same item of the will, "shall leave children or grandchildren."

It is, of course, true that the time of beneficial enjoyment of the shares was postponed until the death of the granddaughter Anna, to whom the secondary life estate was given, but the proportions of those shares were fixed by the occurrence of the event of survivorship of "my said daughter" by language as clear and unambiguous as any of which the English language is capable.

It is entirely apparent that the present phraseology furnishes an excellent example of the familiar exception to the "divide and pay over rule" that "if the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested * * * for futurity is not annexed to the substance of the gift." (*Matter of Crane*, 164 N. Y. 71, 76; *Matter of Leonard*, 143 Misc. 172, 182; see, also, *Matter of Young*, 145 N. Y. 535, 539, 540; *Matter of Lamb*, 182 App. Div. 180; affd., 224 N. Y. 577; *Runyon* v. *Grubb*, 119 App. Div. 17, 19; *Matter of Russell*, 168 N. Y. 169, 176; *Matter of Brown*, 154 id. 313, 327, 328; *Bergmann* v. *Lord*, 194 id. 70, 74; *Matter of Bostwick*, 203 App. Div. 158, 159; *Foote* v. *Peaslee*, 206 id. 329, 332; *Matter of O'Dell*, 124 Misc. 76, 78.)

It is also apparent from the terms of the will when read as a whole, as is universally required (*Matter of McGowan*, 134 Misc. 409, 410, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513; *Matter of Corlies*, 150 Misc. 596, 599; affd., 242 App. Div. 703; *Matter of Weil*, 151 Misc. 841, 844, and authorities cited), that testatrix's dominant intention was to dedicate this portion of her estate to her daughter Ida and to the latter's descendants *per stirpes*. The secondary life estate for Anna was merely a minor and secondary consideration. The rights of Ida's children in the remainder were clearly intended to vest on the death of their mother, but their effectuation in enjoyment was temporarily postponed for the purpose of letting in Anna's intermediate life estate.

This point being determined, it follows that the directions of the will made it obligatory upon the trustees to set up four separate trust funds upon the death of Ida, one for each of the branches of her family. The life use of all four was given to Anna, but the remainder interests then vested. As to three of these, no difficulty is encountered, since they vested absolutely in Anna, Elsa and Ernest.

The gift of the quarter destined for Hans' branch of the family furnishes the only salient peculiarity of the will. This was directed to be paid to Marjorie, the daughter of Hans, instead of to him. Since this was a gift of a determinable part of testatrix's estate,

given nominatim, it must be held to have vested in the named beneficiary as of the date of death of the testatrix (*Matter of Lamb*, 182 App. Div. 180, 186; affd., 224 N. Y. 577; *Matter of Gardner*, 140 id. 122, 129; *Matter of Young*, 145 id. 535, 537, 538; *Matter of Traver*, 161 id. 54, 57; *Roosa* v. *Harrington*, 171 id. 341, 353; *McLean* v. *McLean*, 207 id. 365, 375; *Shangle* v. *Hallock*, 6 App. Div. 55, 58; *Carr* v. *Smith*, 25 id. 214, 216; affd., 161 N. Y. 636; *Murtha* v. *Wilcox*, 47 App. Div. 526; 529; *Matter of Yerks*, 107 id. 240, 242; *Matter of Soy*, 143 Misc. 217, 221), subject to divestment only upon the contingency that neither Hans nor any individual of his branch of the family survive the primary life tenant. Since this divesting contingency did not occur, it follows that this fourth share is payable to the legal representatives of Marjorie. (*Flynn* v. *McDermott*, 183 N. Y. 62, 67; *Sterrit* v. *Lee*, 44 App. Div. 619, 620; *Berkeley* v. *Kennedy*, 62 id. 609; *Walter* v. *Walter*, 60 Misc. 383, 393; affd., 133 App. Div. 893; affd., 197 N. Y. 606; *Palmer* v. *Green*, 63 Hun, 6, 7; *Matter of Brown*, 135 Misc. 611, 614.)

The result of the adoption of this interpretation is to effect exact equality among the descendants of testatrix's daughter which is obviously the result which she intended and is favored by the law in addition. (*Matter of Milhau*, 151 Misc. 283, 291; *Matter of Schrier*, 147 id. 539, 551; *Matter of Gebhardt*, 139 id. 775, 779; *Matter of Balsamo*, 136 id. 113, 115, 116; *Matter of Berbling*, 134 id. 730, 732.)

The anomaly of the position of Elsa Tietzel Beckel in this proceeding requires a word of passing comment. In her individual capacity, she would personally profit by a determination that vesting occurred only on the death of Anna Tietzel, while as the administratrix of the latter, it was her legal and moral obligation to combat such position and contend for the result attained by the court herein. She has pressed the former contention not only in her individual, but also in her fiduciary capacity, to the complete disregard of the interests of her trust. It cannot be considered other than as unfortunate for a person to permit himself to occupy a fiduciary position, the interests of which are so diametrically opposed to his own. (Matthew, 6:24; Luke, 16:13; *Meinhard* v. *Salmon*, 249 N. Y. 458, 467; *Matter of Rooney* v. *Wiener*, 147 Misc. 48, 50.)

Enter decree on notice.