OPINION OF THE COURT
Marie M. Lambert, S.
In proceedings to settle an intermediate account of the decedent’s executors and to construe the decedent’s will, this court has been asked to resolve two issues that have arisen during the administration of this estate. The first involves a review of article fifteenth of the decedent’s will, intended to be an in terrorem clause, requiring a determination of whether bequests to the decedent’s daughter and grandchildren have been forfeited with reference to the various legal actions instituted by the daughter against the decedent and the estate’s executors. The second issue is whether the decedent’s executors have correctly apportioned the estate’s tax liabilities among the estate’s residuary beneficiaries with ref *512 erence to EPTL 2-1.8 and the decedent’s directions in article sixth a of her will.
Simone Robbins, the decedent herein, died on May 28, 1986 leaving a last will which was executed on August 1, 1985. On the day after the decedent’s death, this court issued preliminary letters testamentary to the executors nominated in the will, and ultimately this court admitted the will to probate on August 5, 1986, issuing full letters to the executors. As set forth in the account now before this court, the estate has a value of approximately $3 million.
In articles second and third of her will, the decedent gave certain bequests of personalty to her daughter, Claude Delibes, and $25,000 each to such daughter’s children, Roger Schwartz and Jacqueline Delibes. In article fifteenth, however, the decedent provided an in terrorem clause as follows: "fifteenth: If any beneficiary under this Will shall in any way, directly or indirectly, contest, object to, or hinder the probate of this Will, or dispute any of its provisions, or exercise or attempt to exercise, or give any notice with a view to exercising any right to take any part or share of my estate otherwise than in accordance with the provisions of this Will, or institute or prosecute, or be in any way, directly or indirectly, interested or instrumental in the institution or prosecution of, any action, proceeding, contest or objection, or give any notice, for the purpose of setting aside or invalidating this Will, or any of its provisions or question in any manner the exercise by my Executors of any discretionary power hereunder, or conspire with or give aid to any person doing or attempting any of the foregoing, then in each such case all provisions for such beneficiary and his or her descendants herein shall be void, and my estate shall be disposed of as though such person had predeceased me leaving no descendants surviving me.”
It is with reference to this clause that the executors and certain other parties believe the bequests to Delibes and her children have been forfeited. They claim that prior to and continuing after the decedent’s death, Delibes instituted a number of court actions against the decedent, her own brother, and eventually the decedent’s executors. Each such action was aimed at recovering assets which Delibes claimed had been wrongfully taken by the decedent from the estate of Delibes’ father. The father died in France in 1945 and the decedent allegedly took control of the estate’s assets in derogation of French law.
*513 On September 12, 1984 (predating the execution of the will), Delibes initiated an action against her mother here in New York seeking property or damages valued in excess of $400,000. This action ended with dismissal of the suit on grounds of the Statute of Limitations and the Appellate Division affirmed the dismissal on April 15, 1986.
Subsequently on April 28, 1986, Delibes commenced a new suit against her mother and her brother in France seeking an appraisal and partition of the assets that allegedly comprised her father’s estate. Approximately one month after the start of this suit, the mother died and thereupon Delibes requested the French court to immediately appoint an administrator to marshal the assets of the father’s estate. The French court dismissed this claim and Delibes then appealed such dismissal to the Cour d’ Appel of Paris. She alleged in her papers that the decedent’s executors would rapidly dispose of the property which the mother had improperly removed from the estate of the father so that her rights were imperiled. The Cour d’ Appel, however, affirmed the lower court stating, inter alia, that: "the law of New York applicable to the estate of Mrs. robbins provides very expressly for the reading and granting of probate of a will * * * the status of the executors leaves little doubt that they will carry out their assignment honestly without taking into their possession the personal estate, of which it is not proven that it belongs to this estate.”
In December 1986, after such rebuffs, Delibes initiated still another suit in France; this one against her brother and the decedent’s executors. In this suit, she again asked for an appraisal and partition of her father’s assets. Although Delibes later dropped this action without prejudice, the executors had retained French counsel to defend them in the suit and thus incurred an estate expense.
Finally, as a distinct matter it is alleged that on the day of the decedent’s death, and the day after that, messages were given to Delibes’ attorneys informing them of the decedent’s death and the existence and terms of her will. It is further alleged that despite these communications, an attempt was made on the daughter’s behalf, two days after the decedent’s death, to secure letters of administration from this court. This attempt proved futile when Delibes’ agents could not produce a death certificate to the court. As stated above, preliminary letters testamentary issued to the nominated executors of the decedent’s will the day after the decedent’s death.
*514 Generally, EPTL 3-3.5 permits a testator or testatrix to use an in terrorem clause in a will in an attempt to forestall a probate contest. Such clauses, however, are not favored by courts and are strictly construed (Matter of Alexander, 90 Misc 2d 482, affd 63 AD2d 612; Matter of Ball, 57 Misc 2d 683; Matter of Pasternack, 52 Misc 2d 413). Moreover, the very statute which authorizes their use also lists a number of activities that will not result in the forfeiture of a bequest by a beneficiary under a will containing such a clause. For example, a beneficiary may initiate a construction proceeding without fear of a forfeiture although in reality that proceeding may represent an indirect attack on a will (Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 3-3.5, at 477).
In the present case, the executors and all the decedent’s residuary beneficiaries assert that the clause under consideration is a broadly worded, strong expression of the decedent’s feelings which should be given effect. The executors have submitted a copy of a letter written by the decedent to her son after the New York litigation was concluded, to explain her motives in making the will and her somewhat bitter feelings towards her daughter. Moreover, one of the executors who helped in the preparation of the will states that the testatrix clearly wanted her will done in a way that might prevent the daughter from involving her estate in litigation. In opposition, however, Delibes and her children make a number of convincing arguments to the effect that this clause is too general in scope and that it fails to address the specific situations which the executors rely upon to deny paying benefits to them. So, too, in the opinion of the court it is entirely proper to hold that the shares of the daughter and her children are not forfeit.
Initially, it is clear that Delibes could have been denied her bequests if she had attempted a probate contest. Here, however, she never formally objected to probate. The purported failed attempt to petition for letters of administration after the decedent’s death cannot be considered an objection to probate and therefore an event triggering a penalty. Likewise, the New York lawsuit by Delibes against her mother during the mother’s lifetime and Delibes’ first French court proceeding against her mother and brother should not be considered as events triggering a forfeiture of interests under the will (Matter of Pasternack, supra). Indeed, the daughter’s initial *515 action in New York was commenced even before the will was drawn.
Although Delibes made allegations against the executors of the mother’s estate in the course of the first French proceeding, the executors were not actual parties to her suit. Although the executors were parties to the daughter’s second French proceeding, such litigation could be interpreted as an attempt to force the executors to account in the decedent’s stead for the decedent’s handling of the father’s estate. Thus, this court is not disposed to find that the in terrorem clause has been violated by such action (Estate of Shapiro, NYLJ, Dec. 22, 1977, at 7, col 3). Inasmuch as Delibes’ action can be interpreted as directed against the mother’s fiduciaries to have them account for handling of the mother’s estate, public policy clearly precludes the in terrorem clause from having effect (Matter of Lang, 60 Misc 2d 232). A fiduciary’s role and duty require that no fiduciary can be excused from accountability for his or her actions by any testamentary provision.
Finally, with regard to the grandchildren’s interests, this court finds even less merit to the arguments that their bequests should be held forfeit. No party has alleged that the grandchildren were parties to Delibes’ actions or that they directly or indirectly disputed the will. Moreover, this is not a case where the grandchildren are mere successors in interest to Delibes’ bequests, so that if Delibes had violated the in terrorem provision, they too should be precluded from benefiting in her place (see, Valente & Michaels, No-Contest Clauses, NYLJ, June 28, 1988, at 3, col 1). Rather, a forfeiture is sought to be enforced against the grandchildren here with regard to their distinct gifts under the decedent’s will and merely because of their relationship to Delibes. The particular portion of the clause punishing the children in this manner cannot be given effect as it is violative of the apparent policy of this State. Indeed, the 1966 version of the EPTL actually authorized calling for one person to forfeit a bequest when any other person contested a will. Before the effective date of the statute, however, the Legislature amended the law to eliminate the pertinent provision. As stated in a Practice Commentary to the present statute: "It should be noted that paragraph (b), as enacted at the 1966 legislative session, authorized a condition designed to occasion forfeiture of a disposition in case the will was contested by the beneficiary 1or by some other person.’ The latter clause was amended out of existence at the 1967 legislative session on the ground that its *516 possible consequences were unpredictable and that it might be conducive to fostering or perpetuating intra-familial hostilities.” (Rohan, Practice Commentary, op. cit., at 477.)
The second issue in this case concerns the proper method of apportioning liability for the estate taxes generated by this estate among the decedent’s residuary beneficiaries. On one side, the executors and two charities (which are to receive 50% of the residuary estate) argue in favor of the apportionment scheme set out in EPTL 2-1.8 and case law. The decedent’s son, who is to receive the balance of the residuary estate outright and in trust, argues that article sixth a of the will should control. In article sixth a the testatrix provided as follows: "I direct that all estate, inheritance, succession, and other death taxes, and any interest and penalties thereon, payable under any state, federal or other law now or hereafter in force (but not including any generation-skipping transfer tax imposed under Chapter 13 of the Internal Revenue Code, or comparable provisions of state death tax law) with respect to any property passing under this Will, or payable by reason of my death with respect to any property passing or which shall have passed otherwise than under this Will, shall be charged against and paid from my residuary estate, disposed of under Article fifth of this Will, without apportionment among the beneficiaries of my estate.”
As asserted by the executors and charities, the statutory scheme of apportioning taxes is favored in our law and testamentary provisions directing alternate methods of treating tax liabilities must be clear and unambiguous (see, Matter of Shubert, 10 NY2d 461; Matter of Olson, 77 Misc 2d 515). One real benefit of applying the statute is that deductions allowed by law for charitable gifts are preserved (EPTL 2-1.8 [c] [2]). Thus, the executors and the charities have attempted to depict the decedent’s directions in article sixth as somehow ambiguous. The executors, for example, stress that the decedent’s apportionment clause lacks a direction that the taxes are to be paid as an "administration expense” which many cases hold to be a sufficient direction against statutory apportionment (see, Matter of Bellinger, 27 NY2d 873; Matter of Dewar, 62 AD2d 352; Matter of Cromwell, 199 Misc 143, affd 278 App Div 649, affd 303 NY 681). The charities add that "it is unclear what the phrase 'without apportionment among the beneficiaries of my estate’ modifies or to which beneficiaries the decedent is referring.” Beyond these assertions, the charities have alleged that the decedent’s will, when read as a *517 whole, evinces a "primary charitable intent” on the decedent’s part, suggesting that the charities’ bequests should be preserved at a maximum level, undiminished by any estate taxes (see, Matter of McKinney, 117 Misc 2d 173, affd 101 AD2d 477; Matter of Miller, 76 Misc 2d 1092). Indeed, the charities would require that all taxes be calculated and paid out of the residuary bequests for the decedent’s son after the residuary is divided into shares for the different beneficiaries upon the satisfaction of the preresiduary bequests.
In contrast with the above point of view and in accord with the arguments posited by the decedent’s son, this court finds article sixth is clear, unambiguous and controlling. The decedent’s direction that the taxes are to be "paid from my residuary estate” and "without apportionment,” are unequivocal and not vague. To hold otherwise requires a strained reading of this clause, which violates fundamental rules of construction. Generally, words are to be accorded their plain meaning and provisions made by a testator are not to be "construed” out of the will or treated as meaningless to suit some present purpose.
It is true that article sixth does not have a formula phrase that the estate taxes are to be paid "as an administration expense” but that one formula should not be treated as the sole alternative to the EPTL (see, U.S. Trust, Practical Drafting, at 471 [July 1984]). Probably, many draftsmen have written wills with apportionment clauses like the one before the court intending to avoid the EPTL. It is ironic that the executors here would claim that article sixth is ambiguous when one of them played a role in drafting this will.
Case law from this very court also counters the executors’ and charities’ positions. In Matter of Lindley (22 Misc 2d 9, affd 10 AD2d 925) and Matter of Frank (11 Misc 2d 202), clauses having certain similarities to the one now under review were construed and in each instance, the clauses were found clear and unambiguous so that taxes were paid other than in the manner set out in the statutes of the day.
Finally, it is undeniable that the decedent here had a charitable intent in making her will. It is even more obvious, however, from the entire will (and the letter proffered by the executors) that she intended to benefit many persons and especially her son for whom she evidently had great affection. This is not a case presenting a predominantly charitable motivation as in McKinney (supra), Miller (supra), or other like cases.
*518 It is noted that the executors have requested the approval of fees for their attorneys. The decedent’s son has indicated that he presently lacks information to determine whether those fees are proper. If the executors choose to have fees approved at this time rather than abide their final account, the issue will be determined upon further proceedings, including submission of an affidavit of services by counsel and a hearing on the issue if necessary.
In accord with the above, the parties shall submit a decree on notice construing the decedent’s will in the manner that there is no forfeiture of any bequests to the decedent’s daughter and grandchildren. Furthermore, taxes are to be paid as directed by the testator’s provisions in article sixth.