OPINION OF THE COURT
C. Raymond Radigan, J.
By order to show cause, Lynn Stralem, an income beneficiary under an inter vivos trust created by the decedent (PAP II), seeks a determination that certain provisions of the decedent’s last will and testament and amendments to PAP II are either void as against public policy or do not trigger any forfeiture by Lynn Stralem of her beneficial interest under either instrument.
The decedent, Jean Stralem, died on December 20, 1994. She was survived by her daughter Lynn Stralem and two granddaughters, Robin Becker Maki and Donna Russell Cronin, the children of her predeceased daughter Sandra. The decedent’s will and codicils were offered for probate and the trustees of PAP II submitted their account for the period August 1989 through December 1994. Objections to the will and codicils along with the instrument creating PAP II and its subsequent amendments were filed by Donna Russell Cronin. Those objections were settled with the will and codicils admitted to probate and PAP II and its amendments left intact. This settlement was arrived at between Robin Becker Maki along with her counsel and Donna Russell Cronin along with her counsel with little participation or input from Lynn Stralem or her counsel.
Lynn remains an income beneficiary of PAP II from which the settlement was largely funded. As a party to the accounting of PAP II, Lynn Stralem has a vested interest in the funds taken from the trust to settle the contests. She is concerned, *717 however, that certain steps she might take from this point forward might trigger forfeiture languáge contained in the will and the PAP II trust amendments. The actions contemplated by Lynn Stralem include but are not limited to (1) a proceeding to revoke the letters of trusteeship, (2) filing objections to the accountings of the trustees and the executors, and (3) a construction proceeding relating to language in the trust amendments.
The last will and testament of Jean Stralem establishes a residuary pour over into an inter vivos trust herein referred to as PAP II. Additionally, the testatrix exercised certain powers of appointment she held over some family trusts created many years before. The provisions of the will and PAP II that are the subject of this proceeding may be summarized as follows:
Article 5 of the Will: This provision requires the beneficiaries of any appointed trust properties to execute releases to the trustees of such trusts as a precondition to receiving such benefits. Failure to execute such releases will result, in the case of Lynn Stralem, in the beneficiary being deemed to have predeceased the decedent. The only event that will save the beneficiary’s interest, if no waiver is executed, is if the court judicially determines that the trustees are guilty of fraud, deceit or dishonesty.
Article 7 of the Will: This provision requires the beneficiaries to accept and agree to all provisions of the will in order to share. Further, it includes in terrorem language that disinherits any beneficiary and their issue who institute, maintain or join in any proceedings to either prevent the probate of the will or set aside as invalid or ineffective the trusts set up under PAP II.
Article XIII of the May 9, 1991 PAP II Amendment: This article, like article 7 of the will, requires full acceptance of all terms of the trust as a precondition to benefitting. It also contains the same in terrorem language as article 7 of the will regarding proceedings to set aside the will or invalidating any portion of PAP II.
Article XIV of the May 9, 1991 PAP II Amendment: This article requires the beneficiaries of PAP II to execute releases to the trustees as a precondition to sharing. Failure to release said trustees would result, in the case of Lynn Stralem, in the beneficiary being deemed to have predeceased the settlor/ decedent.
Article XX of the May 9, 1991 Amendment to PAP II: This article creates as a precondition for anyone seeking to qualify *718 as a trustee under PAP II the execution of releases to the existing and prior executors under decedent’s will and trustees of PAP II.
It is well settled that no-contest provisions are not favored by New York courts and are strictly construed (Matter of Alexander, 90 Misc 2d 482, affd 63 AD2d 612; Matter of Robbins, 144 Misc 2d 510). The forfeiture language of paragraph seven of the will limits the sanctioned activity to those which are designed to prevent “the (i) probate of the will or (ii) setting aside as invalid or ineffective (a) the trust created under said agreement * * * or (b) after my death, the trusts that are to be set aside pursuant to said agreement or any outright gift thereunder” (emphasis added).
It is clear from a reading of the pertinent language of paragraph seven that nowhere is a challenge to the executor’s or trustee’s appointment set forth as a grounds to void any benefit conferred or to be conferred upon Lynn Stralem. Accordingly, this language is construed by the court as not to trigger a forfeiture by Lynn should she commence any proceeding to revoke the letters testamentary or trusteeship since such action could not constitute either an attempt to prevent the probate of the will or to set aside any of the trusts. The court need not deal with public policy issues on this part of the application since the activity contemplated by Lynn Stralem is not specifically proscribed in the will.
The court does not accept the proposition of counsel for the fiduciaries that paragraph seven-A of the will should be read broadly enough as to require Lynn Stralem to accept the fiduciary designated without resistance, if she is to enjoy her benefits. If such were a correct reading of seven-A, then Lynn Stralem and others would be forced to accept without challenge a designated fiduciary even if such designee were a known convicted felon or a judicially declared incompetent or an infant (SCPA 707). This is a proposition too silly to even discuss.
Lynn Stralem also seeks a determination that her potential filing of objections to the accounting of the trustees and executors will not trigger any forfeiture language in the will. The dilemma faced by the movant herein is that the language of article 5, paragraph B of the will mandates that Lynn Stralem must execute a release to the trustees as a precondition to receiving any benefits. It is academic that one cannot execute a general release and still file objections to the account. The will does carve out one exception for claims made *719 against the fiduciary which “are finally determined judicially to have resulted from fraud, deceit or dishonesty by such trustee.” (Emphasis added.) Thus it would appear that if claims are made against the trustees, albeit in good faith, the claimant would forfeit her interest in the estate or trust unless the actions of the fiduciaries are eventually determined by the court to be fraudulent or dishonest.
The prerequisite that the beneficiary accept whatever accounting is presented and execute a release in order to receive benefits usurps the beneficiaries’ rights to challenge the fiduciaries’ accounting on grounds of negligence or failure to exercise reasonable care and prudence. The issue here is whether such a precondition violates public policy and is therefore void.
EPTL 11-1.7 is the statutory authority dealing with public policy vis-a-vis the will provisions. It reads as follows:
“(a) The attempted grant to an executor or testamentary trustee, or the successor of either, of any of the following enumerated powers or immunities is contrary to public policy:
“(1) The exoneration of such fiduciary from liability for failure to exercise reasonable care, diligence and prudence.
“(2) The power to make a binding and conclusive fixation of the value of any asset for purposes of distribution, allocation or otherwise.
“(b) The attempted grant in any will of any power or immunity in contravention of the terms of this section shall be void but shall not be deemed to render such will invalid as a whole, and the remaining terms of the will shall, so far as possible, remain effective.
“(c) Any person interested in an estate or testamentary trust may contest the validity of any purported grant of any power or immunity within the purview of this section without diminishing or affecting adversely his interest in the estate or trust, any provision in any will to the contrary notwithstanding.”
Without putting in the will the language specifically proscribed by EPTL 11-1.7, the drafters have not so cleverly attempted to grant such prohibited powers and immunities by forcing the beneficiaries to accept the accounting as presented with no opportunity to challenge it on grounds of failure to exercise reasonable prudence, care and diligence (a rose by any other name . . .).
EPTL 11-1.7 is the successor to Decedent Estate Law § 125. The language in today’s statute is virtually identical with that *720 of its predecessor, enacted in 1936. The basis for that section was summarized in the notes of the Commission that created Decedent Estate Law § 125 and read as follows: “The increasing practice of testamentary draftsmen and corporate fiduciaries in vesting in testamentary fiduciaries almost unlimited powers, with a minimum of obligations, is a serious potential menace not only to the rights of a surviving spouse but of the children and other dependents of the testator and of all persons interested in estates. This tendency must be curbed. The primary duties of ordinary care, diligence and prudence (King v. Talbot, 40 N. Y. 76) and of absolute impartiality among the several beneficiaries (Matter of Stutzer, 156 Misc. 684, 282 N. Y.S. 311) are of the very essence of a trust, and any impairment of these or similar obligations of a fiduciary are contrary to public policy.” (Reprinted following Decedent Estate Law § 125, McKinney’s Cons Laws of NY, Book 13, at 636 [1949 ed].)
The Legislature tried to curb the practice of insulating fiduciaries from an obligation to exercise reasonable care, diligence and prudence by making it against public policy. Despite the Legislature’s actions, the practice continues today, as evidenced by the language contained in the will of Jean Stralem. The courts have routinely held these attempts to exonerate a fiduciary as being violative of public policy (Matter of Allister, 144 Misc 2d 994; Matter of Robbins, 144 Misc 2d 510, supra; Matter of Lang, 60 Misc 2d 232; Matter of Lubin, 143 Misc 2d 121).
Any language, such as that contained in article 5, paragraph B of Jean Stralem’s last will and testament, that voids the benefits of anyone not joining in a release to the fiduciaries, thus denying them a right to object to the accountings, is void as against public policy. The common theory throughout the cases on the subject is that “[t]he attempted exoneration of the fiduciary for any loss unless occasioned by ‘willful neglect or misconduct’ is a nugatory provision amounting to nothing more than a waste of good white paper” (Matter of Curley, 151 Misc 664, 675, mod on other grounds 245 App Div 255, affd 269 NY 548). In today’s jargon such provisions are a waste of “good computer bytes.”
Accordingly, the court construes article 5, paragraph B of Jean Stralem’s last will and testament as void as against public policy to the extent that it requires the execution of a release to the fiduciaries as a prerequisite to benefitting. The same ruling applies to any suggestion that the mere act of filing of *721 objections to the fiduciaries’ account could trigger a forfeiture. The parties are also directed to the comments of Surrogate Holzman in Matter of Lubin (supra), wherein he raises the specter of possible violations of Code of Professional Responsibility DR 7-102 (22 NYCRR 1200.33) where an attorney-draftsman includes fiduciary powers which he knows or should know violate public policy.
The movant herein also asks the court to determine whether the mere seeking of a construction of certain provisions of the PAP II trust and its amendments can trigger a forfeiture. The movant’s concern here is that while a statutory provision exists protecting will construction proceedings from any forfeiture under an in terrorem clause (EPTL 3-3.5 [b] [3] [E]), no such statutory provision exists dealing with proceedings to construe the terms of an inter vivos trust.
It is movant’s intention to commence a proceeding to construe certain portions of PAP II, specifically article XIII, paragraph B; article XIV, paragraph B and article XX, paragraph E of the second amendment dated May 9, 1991. Since no statute similar to EPTL 3-3.5 (b) (3) (E) exists for inter vivos trusts, the court would have to determine whether a provision in such instrument calling for a forfeiture of any beneficial interest of anyone bringing a construction proceeding violates public policy. However, in order to make such a finding, there must first exist a provision in the instrument that calls for such forfeiture.
As with wills, in terrorem clauses in inter vivos instruments should be equally disfavored. If they exist, they must be strictly construed. In the identified provisions of the PAP II trust amendments, there exists no language that could fairly be interpreted as requiring the forfeiture of the interest of any person who seeks to construe any of its terms or provisions. Accordingly, it is the finding of this court that any applications brought to construe any of the terms or provisions of PAP II and its amendments will not result in a forfeiture of any benefits to the person bringing such proceeding.