■ In the Matter of JOHN F. CLAPPER, SR., Deceased. JOANNE CLAPPER, as Executor of JOHN F. CLAPPER, SR., Deceased, Respondent; JOHN F. CLAPPER, JR., Appellant. [718 NYS2d 468] —Mugglin, J. Appeal from an order of the Surrogate's Court of Greene County (Pulver, Jr., S.), entered December 13, 1999, which, *inter alia*, ordered that petitioner submit proposed let-

ters testamentary and a proposed probate decree in order to admit to probate an instrument proffered as the last will and testament of decedent.

On July 19, 1996, John F. Clapper, Sr. (hereinafter decedent) executed an instrument purporting to be his last will and testament before Charles Clay, the attorney draftsman, and his secretary, Nancy Ferretti. The will named petitioner, his daughter, as executor, bequeathed 1,000 loose pennies to respondent, decedent's son, and left the rest, residue and remainder of his estate to petitioner. Respondent objected to probate, contending lack of due execution, that decedent lacked testamentary capacity, and that the will was the product of undue influence and fraud exercised by petitioner. Following a hearing conducted pursuant to SCPA 1404 (4) and a bench trial, Surrogate's Court admitted the will to probate. Respondent appeals.

The evidence presented to Surrogate's Court compellingly demonstrates that the requirements for proper execution of a will were met (see, EPTL 3-2.1). The will contained a self-executing affidavit signed by the two attesting witnesses containing their opinion that decedent "was of sound mind, memory and understanding and not under any restraint or in any respect incompetent to make a Will." This type of attestation clause creates a presumption that the will was duly executed and constitutes prima facie evidence of the facts therein attested to by the witnesses (see, Matter of Ruso, 212 AD2d 846, 846-847; Matter of Yenei, 132 AD2d 870). Additionally, the surviving witness testified to compliance with the due execution requirements of the statute. No probative evidence was offered which would tend to rebut the presumption created by the attestation clause or dispute the corroborative testimony of the surviving attesting witness. Thus, Surrogate's Court correctly concluded that the requirements for the proper execution of a will were met.

Next, the proponent of a will has the burden of proving that the testator possessed testamentary capacity by showing that (1) he understood the nature and consequences of executing a will, (2) he knew the nature and extent of the property he was disposing of, and (3) he knew those who are the natural objects of his bounty and his relationship to them (see, Matter of Kumstar, 66 NY2d 691, 692; Matter of Fish, 134 AD2d 44, 46). We agree that Surrogate's Court properly found evidence establishing that decedent had testamentary capacity. In addition to the testimony of the surviving attesting witness, the evidence established that at the time the will was executed, decedent

lived independently, cared for himself and had his own social life. To show lack of testamentary capacity, respondent points to decedent's testimony in an unrelated trial that "I can't remember what I did yesterday" and that decedent stated he could not hear the question posed to him on two separate occasions. In addition, respondent called a psychiatrist who, having never met decedent, nevertheless expressed his opinion based on information given to him by respondent and his wife and in response to hypothetical questions, that decedent was suffering from "complicated grief." Notably, he did not opine that this condition (assuming it was a correct diagnosis) would affect testamentary capacity. Clearly, respondent's evidence on this issue lacks probative value.

Finally, it is the objectant who has the burden of establishing the existence of undue influence or fraud (*see, Matter of Beneway's Will*, 272 App Div 463, 468). The test for undue influence is "that a will should not be invalidated for undue influence unless the acts of the influencing party are shown to effectively make it [her] will and not the will of the decedent" (*Matter of Klitgaard*, 83 AD2d 651; *see, Matter of Antoinette*, 238 AD2d 762, 763). To establish fraud, it must be shown that the "proponent knowingly made a false statement that caused decedent to execute a will that disposed of his property in a manner different from the disposition he would have made in the absence of that statement" (*Matter of Coniglio*, 242 AD2d 901, 902; *see, Matter of Beneway's Will, supra*, at 469). At best, respondent's evidence establishes that petitioner had motive and opportunity to influence decedent. Notably lacking, however, is any evidence that petitioner knowingly made a false statement which altered the testamentary disposition that would have been made in the absence of such a statement. Moreover, there is no evidence to refute petitioner's statement that she did not know the contents of decedent's will until after it had been executed. Conversely, the record clearly establishes that from the time of his wife's death in July 1995, decedent and respondent had only an adversarial relationship, communicating only through the courts. Respondent sued decedent on four separate occasions, the first being commenced on the day of the funeral of decedent's wife (respondent's mother). Decedent instituted a fifth proceeding seeking visitation with his grandson (respondent's son). Clearly, this establishes a rational explanation for the manner in which decedent disposed of his property by will.

Mercure, J. P., Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.