■ In the Matter of the Estate of SAM SEELIG, Deceased. EDWIN FIELD et al., as Executors of SAM SEELIG, Deceased, Respondents; CGH FOUNDATION, INC., et al., Respondents, and ROSE AND SAM SEELIG CHARITABLE TRUST, Appellant. [786 NYS2d 610]—

Peters, J. Appeal from an order of the Surrogate's Court of Sullivan County (Ledina, S.), entered November 12, 2003, which, inter alia, granted petitioners' motion for summary judgment dismissing an objection alleging fraud and undue influence.

Upon our prior review of this matter (302 AD2d 721 [2003]), we affirmed an award of partial summary judgment dismissing an objection to decedent's December 31, 1998 will grounded upon due execution. Now, we review the dismissal of yet another objection alleging that the will was procured through the fraud and undue influence of Stephen Oppenheim, the drafting attorney, and petitioner Selma Field, an executor, beneficiary and director of respondent Community General Hospital of Sullivan County and executive director of respondent Community General Hospital Foundation (hereinafter CGH), a legatee and contingent legatee, respectively, of decedent's residuary estate. The challenge was propounded by respondent Rose and Sam Seelig Charitable Trust (hereinafter the trust), an inter vivos trust set up by decedent in October 1998, which was granted decedent's residuary estate in an earlier will but was wholly excluded from this will.

In a contested probate proceeding, summary judgment is appropriate if the proponent's submission of evidence establishes a prima facie case and the objectant fails to raise any genuine issues of fact (*see Matter of Minervini,* 297 AD2d 423, 424 [2002]). Here, with the trust as the objectant having the burden of establishing the existence of undue influence or fraud with more than "mere '[c]onclusory allegations and speculation' " (*Matter of Young,* 289 AD2d 725, 727 [2001], quoting *Matter of Dietrich,* 271 AD2d 894, 894 [2000]), we find its proffer inadequate.

To establish undue influence, it must be demonstrated that " 'the acts of the influencing party are shown to effectively make it [his or her] will and not the will of the decedent' " (*Matter of Clapper,* 279 AD2d 730, 732 [2001], quoting *Matter of Klitgaard,* 83 AD2d 651 [1981]). To prove fraud, it must be

shown that "the 'proponent knowingly made a false statement that caused decedent to execute a will that disposed of his property in a manner different from the disposition he would have made in the absence of that statement' " (*Matter of Clapper, supra* at 732, quoting *Matter of Coniglio,* 242 AD2d 901, 902 [1997]; *see also Matter of Young, supra* at 727). Here, the trust argues that Field, both in her professional and personal capacities, unduly influenced decedent to change his November 1998 will so that the hospital and/or CGH would be entitled to receive decedent's residuary estate. According to the trust, Field became aware of decedent's November 1998 will within a week after its execution, immediately summoning petitioners' attorney to prepare a Charitable Remainder Unit Trust (hereinafter CRUT) which would have resulted in an inter vivos trust controlled by the hospital and CGH. However, when decedent read the newly-created CRUT, he rejected it outright because he wanted more control over his assets during his lifetime. Thereafter, Field purportedly consulted with decedent who chose Oppenheim to draft a new will. Oppenheim met with decedent on December 29, 1998 and, two days later, a will signing ceremony was held. Field, her husband and others were present at the signing and were among those named as executors in the will.

While we agree that there are inconsistencies in both Field's and Oppenheim's testimony regarding the way in which Oppenheim was ultimately chosen to represent decedent, the contention that the will resulted from their undue influence or fraud is wholly unsupported. Clearly, decedent's rejection of the CRUT drafted by petitioners demonstrates that Field did not have the ability to unduly influence decedent to " 'effectively make it [her] will and not the will of decedent' " (*Matter of Clapper, supra* at 732, quoting *Matter of Klitgaard, supra* at 651). Further, there was no evidence that decedent was mentally or emotionally dependent on Field or Oppenheim, that decedent was incapable of making his own relevant decisions, or was anything other than of sound mind during the period in question.

The December 1998 will was also consistent with decedent's philanthropic pattern during his lifetime. Most significantly, it reflects the specific legacies which were detailed by decedent in the notes he gave to Oppenheim at their initial meeting. While we acknowledge that an issue was raised as to whether Oppenheim and Field failed to disclose their long-term friendship to decedent prior to Oppenheim's involvement, we do not find such omission sufficient to raise an issue of fraud. Even if there was sufficient evidence to establish their failure to disclose,

there remains insufficient evidence that the nondisclosure was intentional or that decedent would have distributed his property differently had he been aware of their relationship (*see Matter of Clapper, supra* at 732).

In so finding, we reject any contention that *Matter of Putnam* (257 NY 140 [1931]) and its progeny dictate a contrary result. Even acknowledging that Field was a beneficiary under the will, we do not find her to have held a confidential or fiduciary relationship with decedent whereby an inference of undue influence might have been created. Unlike *Putnam* and the cases that followed, Field's association with decedent was mostly in her professional capacity; she was not his lawyer (*compare Matter of Putnam, supra*), financial consultant (*compare Matter of Bach,* 133 AD2d 455 [1987]), or his doctor (*compare Matter of Satterlee,* 281 App Div 251, 252 [1953], *lv denied* 1 AD2d 774 [1956]). Although we recognize that an executor could be found to hold a fiduciary relationship with a testator (*see Matter of Stalter,* 270 AD2d 594, 597 [2000], *lv denied* 95 NY2d 760 [2000]), the relationship here was not of that type (*compare Matter of Putnam, supra; Matter of Collins,* 124 AD2d 48, 49-50 [1987]).

Crew III, J.P., Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, with one bill of costs.