*140 OPINION OF THE COURT
Peters, EJ.
In 2006, decedent executed a will naming one of his two sons, Neil Prevratil, as executor and sole beneficiary of his estate. The major asset of decedent’s estate was a farm which he used as a refuge for rescued horses. In February 2011, after decedent was diagnosed with lung cancer, he contacted an attorney for the purpose of revising his will. As decedent’s medical condition worsened, decedent’s brother, Charles Prevratil, and sister-in-law, Deborha Prevratil, traveled from their home in Florida to New York in April 2011 to care for decedent. On May 24, 2011, five days before his death, decedent executed a new will in which he named his other son, petitioner Frank A. Prevratil, as executor, and divided his estate equally between decedent’s friends, petitioners Sonya J. Stack and Rebecca L. Adrian (hereinafter collectively referred to as petitioners), and Charles Prevratil. The will specifically disinherited Neil Prevratil.
On June 20, 2011, Neil Prevratil commenced proceeding No. 1 seeking to admit decedent’s 2006 will to probate. Petitioners thereafter prevailed upon Frank A. Prevratil and his wife — the named successor executor — to petition to admit the 2011 will to probate. After they allegedly refused to do so, on August 6, 2011, petitioners commenced proceeding No. 2 seeking to admit the 2011 will to probate. Frank A. Prevratil subsequently commenced proceeding No. 3 also seeking probate of the 2011 will. Neil Prevratil filed objections to the 2011 will, claiming improper execution, lack of testamentary capacity and that the will was procured by fraud and undue influence, and also seeking a determination that petitioners had triggered the will’s no contest clause by offering the will for probate and seeking letters of administration. Following discovery, petitioners and Charles Prevratil (hereinafter collectively referred to as the proponents) moved for summary judgment dismissing the objections. Surrogate’s Court granted the motion and this appeal by Neil Prevratil ensued.
First addressing the challenge to decedent’s testamentary capacity, the burden rested with the proponents to demonstrate that decedent “understood the consequences of executing the will, knew the nature and extent of the property being disposed of and knew the persons who were the natural objects of [his] bounty, and [his] relationship to them” (Matter of Ruparshek, 36 AD3d 998, 999 [2007]; see Matter of Kumstar, 66 NY2d 691, 692 [1985]). Here, the proponents offered the self-executing affi *141 davit of the attesting witnesses, who opined that decedent was of sound mind and memory and in all respects competent to make a will. This constituted prima facie evidence of the facts attested to and created a presumption of testamentary capacity (see Matter of Walker, 80 AD3d 865, 866 [2011], lv denied 16 NY3d 711 [2011]; Matter of Paigo, 53 AD3d 836, 838 [2008]). Further, the testimony of these two witnesses and Harry Miller, the attorney who drafted the will, established that decedent was aware of the nature and extent of his property and knew who the objects of his bounty were both prior to and at the time of execution. To that end, Miller testified that decedent ardently wished the farm to remain a horse sanctuary after his death and, believing that Neil Prevratil would promptly sell the property, decided to change his will to devise such property to petitioners, who would further that goal.
With the burden shifted to Neil Prevratil to produce evidence demonstrating a triable issue of fact (see Matter of Scaccia, 66 AD3d 1247, 1251 [2009]; Matter of Murray, 49 AD3d 1003, 1005 [2008]), he focused upon decedent’s weakened condition and use of analgesic medications during the period of time preceding the will signing. That decedent suffered from terminal cancer and was in a declining physical state as a result thereof does not, without more, create a question of fact on the issue of testamentary capacity, as “the appropriate inquiry is whether the decedent was lucid and rational” at the time the will was signed (Matter of Paigo, 53 AD3d at 838 [internal quotation marks and citations omitted]; see Matter of Alibrandi, 104 AD3d 1175, 1176 [2013]; Matter of Murray, 49 AD3d at 1005; Matter of Williams, 13 AD3d 954, 957 [2004], lv denied 5 NY3d 705 [2005]). Furthermore, Deborha Prevratil testified that decedent stopped taking pain medication on the evening before the will signing “because he wanted to be of clear mind,” and there is no evidence in the record of any medication ingestion by decedent until after the 2011 will had been executed. Lacking any proof that decedent was not rational, lucid or competent at the time he executed the will, Surrogate’s Court properly granted summary judgment dismissing this objection (see Matter of Castiglione, 40 AD3d 1227, 1228 [2007], lv denied 9 NY3d 806 [2007]; Matter of Seelig, 13 AD3d 776, 777 [2004], lv denied 4 NY3d 707 [2005]).
Neil Prevratil also argues that decedent’s will was the product of undue influence on the part of Deborha Prevratil and the proponents. “To establish undue influence, the burden is on the *142 objectant to show that the influencing party’s actions are so pervasive that the will is actually that of the influencer, not that of the decedent” (Matter of Malone, 46 AD3d 975, 977 [2007] [citations omitted]; see Matter of Greenwald, 47 AD3d 1036, 1037 [2008]).
“[T]he influence exercised [must] amount[ ] to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his [or her] free will and desire, but which he [or she] was unable to refuse or too weak to resist” (Matter of Walther, 6 NY2d 49, 53 [1959]; see Matter of Alibrandi, 104 AD3d at 1177-1178; Matter of Greenwald, 47 AD3d at 1037).
Although undue influence may be proven through circumstantial evidence, such evidence must be “of a substantial nature” (Matter of Walther, 6 NY2d at 54; see Matter of Aoki, 99 AD3d 253, 265 [2012]; Matter of Moles, 90 AD3d 473, 474 [2011]).
Initially, we find that the evidence adduced was insufficient to establish that a confidential relationship existed between decedent and either Stack or Deborha Prevratil, such that the burden would shift to the proponents to show that the transaction from which they benefitted was free from undue influence (see Matter of Graeve, 113 AD3d 983, 984 [2014]; Matter of Seelig, 13 AD3d at 779; Feiden v Feiden, 151 AD2d 889, 891 [1989]).[1] Although Stack transmitted documents to decedent’s attorneys during the revision process — including both the initial changes naming her and Adrian as beneficiaries of the estate as well as the subsequent addition of Charles Prevratil as a beneficiary — Miller testified that decedent had authorized documents to be sent to him through Stack, as decedent did not have a fax machine. Testimony further established that any changes to the will were reviewed with decedent to confirm that they reflected his intent. There is nothing in the record to indicate that Stack’s role was anything more than a “conduit to effectuate decedent’s desires” (Matter of Greenwald, 47 AD3d at 1038). As for Deborha Prevratil, although she prepared meals *143 and administered medications for decedent in the final period of his illness, he was not under her exclusive care and control and had fairly regular contact with friends as his illness progressed (compare Oakes v Muka, 69 AD3d 1139, 1140 [2010], appeal dismissed 15 NY3d 867 [2010]). Nor was there any proof that decedent’s mental condition had deteriorated or that Deborha Prevratil had any role in his financial affairs. Moreover, any legal presumption that decedent’s decision to include Charles Prevratil as a beneficiary was the product of undue influence was counterbalanced by the familial relationship between the two (see Matter of Walther, 6 NY2d at 56; Jacks v D’Ambrosio, 69 AD3d 574, 575 [2010]; Matter of Zirinsky, 43 AD3d 946, 948 [2007], lv denied 9 NY3d 815 [2007]; Matter of Swain, 125 AD2d 574, 575 [1986], lv denied 69 NY2d 611 [1987]).
With the burden thus remaining with Neil Prevratil, we find that there has been no showing that any of the proponents actually exercised undue influence with respect to the distribution of decedent’s assets. The evidence established that decedent’s relationship with Neil Prevratil had rapidly deteriorated in the years preceding decedent’s death, and decedent feared that Neil Prevratil would sell the farm if it were devised to him. With the exception of one brief encounter, the two had no contact during the year and a half leading up to decedent’s ultimate demise. The affidavit of a long-time friend of decedent established that, as early as 2009, decedent indicated his intent to leave his farm to petitioners. Another of decedent’s friends testified that, after being diagnosed with lung cancer, decedent told him that he wanted to leave his property to the proponents. These individuals explained that decedent wished the farm to remain a refuge for rescued horses after his death, and believed that petitioners — both of whom worked on the farm — would continue farm operations after he died.
Miller testified that he had various discussions with decedent regarding the disposition of his estate beginning in February 2011, and confirmed that he drafted the will based on decedent’s instructions. In that regard, Miller too testified that decedent indicated that he did not wish to devise the farm to his sons because they “were simply going to sell [it] when he died,” and believed that petitioners would continue to use the farm as a refuge for rescued horses should he devise it to them. According to the paralegal who witnessed the execution of the will, decedent mentioned Neil Prevratil in the course of the will signing, indicating that he was intentionally disinheriting Neil Prev *144 ratil because he refused to respect his wishes. Phillip Tribble, the attorney who supervised the execution ceremony as a substitute for Miller, testified that he reviewed the will “paragraph by paragraph” with decedent during the course of the execution ceremony. Notably, none of the proponents was present when decedent executed the will, and both Tribble and the paralegal testified that decedent did not appear to be under any restraint or duress at the time.
In response, Neil Prevratil’s attempt to show the actual exercise of undue influence consisted of allegations that were conclusory and speculative (see Matter of Scaccia, 66 AD3d at 1252; Matter of Nofal, 35 AD3d 1132, 1135 [2006]). The only argument made with regard to Adrian is that she may have had an intimate relationship with decedent at some point in time, an assertion which finds no support in the record and does not, in any event, rise to the level of undue influence. Furthermore, as noted, the unrefuted testimony establishes that Stack was merely serving as a conduit for information during the process of revising decedent’s will. As for Deborha Prevratil and Charles Prevratil, Neil Prevratil argues that the addition of Charles Prevratil as a beneficiary just one day before the will signing, and during a time when they were living at decedent’s home and providing care for him, creates an issue of fact as to undue influence. Yet neither “the promptings of affection[,] the desire of gratifying the wishes of another[,] the ties of attachment arising from consanguinity, [n]or the memory of kind acts and friendly offices” is indicative of undue influence (Matter of Walther, 6 NY2d at 53 [internal quotation marks and citation omitted]; see Matter of Aoki, 99 AD3d at 266; Matter of American Comm. for Weizmann Inst. of Science v Dunn, 36 AD3d 419, 419-420 [2007], affd 10 NY3d 82 [2008]; Matter of Arnold, 78 AD2d 753, 753-754 [1980], appeal dismissed 53 NY2d 703 [1981]). While Neil Prevratil hypothesizes that the addition of Charles Prevratil as a beneficiary was induced by improper influence rather than gratitude and affection,[2] “[a]n inference *145 of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference” (Matter of Walther, 6 NY2d at 54; see Matter of Stafford, 111 AD3d 1216, 1219 [2013]; Matter of Walker, 80 AD3d at 868; Matter of Nofal, 35 AD3d at 1135-1136). Accordingly, the objection grounded upon undue influence was also properly dismissed.
Neil Prevratil’s fourth objection requested that Surrogate’s Court construe the language of the no contest clause in such a way as to find that, by offering the 2011 will for probate and seeking letters of administration, petitioners forfeited the interests granted to them under the will. While Surrogate’s Court implicitly rejected such a reading of the no contest clause by dismissing that objection, it was without authority to construe the terms of the will prior to probate. The Court of Appeals has stated that “[p]robate logically precedes construction,” since “there is no will to construe” prior to probate (Matter of Davis, 182 NY 468, 475 [1905]; accord Matter of Martin, 17 AD3d 598, 599 [2005]). There is not a no contest clause exception to the rule that a will must be probated in order for a court to construe any of its provisions (see Matter of Martin, 17 AD3d at 599; Matter of Baugher, 29 Misc 3d 700, 702-703 [2010]; Matter of Shear, 182 Misc 2d 684, 686 [1999]; Matter of Zurkow, 74 Misc 2d 736, 738 [1973]; but see Matter of Grupp, 160 Misc 2d 407, 411-413 [1994]). Rather, pursuant to SCPA 1420 (3), it is only “[u]pon the entry of a decree admitting the will to probate” that a court may resolve a party’s request for a determination of the construction or effect of a provision of the will. Here, Surrogate’s Court’s order made no decree admitting the will to probate, and we take judicial notice of the fact that such decree has yet to issue. This need not detain us, however, as we possess “concurrent jurisdiction [with Surrogate’s Court] in matters involving decedents’ estates” (Dunham v Dunham, 40 AD2d 912, 913 [1972]; see NY Const, art VI, §§ 1 [a]; 4 [k]; 7 [a]; 12 [f]; H & G Operating Corp. v Linden, 151 AD2d 898, 900 [1989]; see also Judson v Central Vt. R.R. Co., 158 NY 597, 601 [1899]). Given that the parties have fully briefed their arguments regarding the construction and effect of the no contest clause, and mindful that Surrogate’s Court was obliged to admit the 2011 will to probate upon dismissal of the first three objections (see SCPA 1408 [2]; Matter of Pascal, 309 NY 108, 113 [1955]; Matter of Cherkoff, 9 AD2d 557, 558 [1959]), we will exercise our power to admit the will to probate and reach the *146 merits of the dispute in the interest of judicial economy and to avoid unnecessary future ligation.
While enforceable, no contest clauses are disfavored and must be strictly construed (see Matter of Singer, 13 NY3d 447, 451 [2009]; Matter of Fairbairn, 46 AD3d 973, 974 [2007], lv denied 10 NY3d 708 [2008]; Oakes v Muka, 31 AD3d 834, 835 [2006]). The no contest provision at issue provides for revocation of a beneficiary’s interest if the beneficiary “contest[s] the probate or validity of [the] Will or any provision thereof, or . . . institute [s] . . . any proceeding to . . . prevent any provision [of the Will] from being carried out in accordance with its terms.” Here, petitioners did not contest the validity of the will or any of its provisions by seeking to admit the will to probate (see Matter of Stralem, 181 Misc 2d 715, 718 [1999]; see generally SCPA 1402 [1] [b]; EPTL 3-3.5 [b] [1]; cf. Matter of Fairbairn, 46 AD3d at 974). Rather, given that Neil Prevratil had already offered the 2006 will for probate nearly two months earlier, they reasonably undertook to probate the 2011 will themselves after the nominated executor and successor executor thereunder failed to do so.
To the extent that petitioners sought letters of administration, we cannot conclude that, by including the no contest clause in his will, decedent intended to preclude a beneficiary from challenging or otherwise questioning the conduct of a fiduciary. “We begin, of course, with the elemental proposition that in construing a will the court’s foremost objective is ascertainment of [the] decedent’s intent, and, concomitantly, effectuating the will’s purpose” (Matter of Carmer, 71 NY2d 781, 785 [1988]; see Matter of Singer, 13 NY3d at 451; Matter of Covert, 97 NY2d 68, 74 [2001]; Matter of Bieley, 91 NY2d 520, 525 [1998]; Matter of Fabbri, 2 NY2d 236, 239 [1957]). The decedent’s intent must be ascertained “ ‘not from a single word or phrase[,] but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed’ ” (Matter of Bieley, 91 NY2d at 525, quoting Matter of Fabbri, 2 NY2d at 240; accord Matter of Carmer, 71 NY2d at 785-786; Matter of Stiefel, 24 AD3d 994, 996 [2005], lv dismissed 6 NY3d 843 [2006]; Matter of McCabe, 269 AD2d 727, 728 [2000]; see Matter of Scale, 38 AD3d 983, 984 [2007]). Where the instrument, taken as a whole, establishes a dominant dispositional scheme, individual provisions must be read to carry out that scheme, “notwithstanding that general rules of interpretation might point to a different result” (Matter of Bieley, 91 *147 NY2d at 525 [internal quotation marks and citation omitted]; see Matter of Carmer, 71 NY2d at 785-786; Matter of Thall, 18 NY2d 186, 192 [1966]; Matter of Fabbri, 2 NY2d at 240; Matter of Murray, 84 AD3d 106, 113 [2011], lv denied 18 NY3d 874 [2012]; Matter of White, 65 AD3d 1255, 1257 [2009]; Matter of McCabe, 269 AD2d at 728).
Decedent’s intent, as manifested in the 2011 will, is plain. Quite obviously, what decedent desired was that the entirety of his estate be distributed equally to, and remain with, the proponents. Indeed, the will makes assiduous provision for the continuation — under the proponents’ collective care — of decedent’s farm for rescued horses. By contrast, the will expressly “made no [dispositional] provision[ ]” for either Neil Prevratil or Frank A. Prevratil. While petitioners admittedly sought letters of administration in conjunction with proceeding No. 2, they did so nearly three months after decedent’s death, some seven weeks after Neil Prevratil offered the 2006 will for probate and only after the fiduciaries named in the 2011 will refused to seek probate of the will under which they were named. Petitioners’ request for letters of administration was, under the circumstances, consistent with a desire to effectuate — rather than defeat — decedent’s express testamentary scheme. Thus, although the no contest clause in the 2011 will purports to disinherit any beneficiary who “shall institute . . . any proceeding to . . . prevent any provision [of the will] from being carried out in accordance with its terms,” an isolated and overly literal reading of the clause would “constitute an abdication of the [C]ourt’s duty to accomplish, as nearly as possible, the disposition actually intended by the testator, and would reduce its task to a simple exercise in semantics” (Matter of Fabbri, 2 NY2d at 243; see Matter of Carmer, 71 NY2d at 785 [holding that the courts’ interpretative task “is not furthered by rote ascription of technical meanings to terms regardless of context”]; Matter of Kosek, 31 NY2d 475, 484-485 [1973] [in determining the meaning of a particular testamentary provision, the Court noted that there “is no more likely way to misapprehend the meaning of language . . . than to read the words literally, forgetting the object which the document as a whole seeks to achieve” (internal quotation marks and citations omitted)]). “Since the [decedent’s] dominant intent [is] inferable from the [will] itself, its fulfillment constitutes no redrafting” (Matter of Fabbri, 2 NY2d at 242). Rather, reading the will as a whole and in light of the facts and circumstances surrounding *148 its creation (see id. at 240; Matter of Scale, 38 AD3d at 986; Matter of McCabe, 269 AD2d at 728) — and mindful of the general precept that no contest clauses, although valid, are disfavored and should be narrowly construed — we cannot conclude that decedent intended to preclude petitioners from seeking letters of administration in the face of the named fiduciaries’ inaction.
Further, even if decedent’s intent were to prohibit a beneficiary from questioning the conduct of a nominated fiduciary, such a broad no contest clause would be void as against public policy (see Matter of Rimland, 2003 NY Slip Op 50966[U], *5 [Sur Ct, Bronx County 2003]; Matter of Stralem, 181 Misc 2d at 718). EPTL 11-1.7 — the statutory provision addressing public policy as it pertains to will provisions — is designed “to curb the practice of insulating fiduciaries from an obligation to exercise reasonable care, diligence and prudence by making it against public policy” (Matter of Stralem, 181 Misc 2d at 720; see Margaret Valentine Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 11-1.7 at 144; Matter of Lang, 60 Misc 2d 232, 234-235 [1969]). A no contest clause that attempts to preclude a beneficiary from questioning the eligibility or conduct of a fiduciary does just that, and is therefore contrary to public policy (see Matter of Egerer, 30 Misc 3d 1229[A], 2006 NY Slip Op 52713[U], *3 [Sur Ct, Suffolk County 2006]; Matter of Fromartz, 2005 NY Misc LEXIS 4654, *2 [2005]; Matter of Rimland, 2003 NY Slip Op 50966[U], *5 [2003]; Matter of Stralem, 181 Misc 2d at 720; Matter of Ascher, 175 Misc 943, 944-945 [1941]; Matter of Robbins, 144 Misc 2d 510, 514-515 [1989]; Matter of Lang, 60 Misc 2d at 235; see also 12-207 War ren’s Heaton on Surrogate’s Court Practice § 207.01).
The dissent agrees that such a clause is void, but only to the extent that it bars challenges based upon probable cause. However, there is no basis in either the EPTL or this state’s jurisprudence for imposition of such a requirement. The EPTL clearly and unequivocally sets forth a blanket prohibition against any attempt to exonerate a fiduciary from his or her obligation to exercise reasonable care, diligence and prudence, and — with one narrow exception not relevant here — expressly provides that the presence or absence of probable cause is not relevant to the validity of a no contest clause (see EPTL 3-3.5 [b]; 11-1.7).[3]
*149 In sum, petitioners did not forfeit their interests under the 2011 will by seeking letters of administration. To the extent not specifically addressed herein, Neil Prevratil’s remaining ascriptions of error have been reviewed and found to be lacking in merit.

. Neil Prevratil’s argument that a confidential relationship existed between decedent and either Adrian or Charles Prevratil is raised for the first time on appeal and, as such, is not preserved for our review (see Matter of Buchting, 111 AD3d 1114, 1117 n 4 [2013]; Matter of Walker, 80 AD3d at 868 n).

. Although Neil Prevratil places emphasis on a phone conversation allegedly had between Frank A. Prevratil and Deborha Prevratil, wherein Deborha Prevratil allegedly expressed frustration with decedent for failing to do something concrete about his will, this does not constitute “direct evidence that [Deborha Prevratil or Charles Prevratil] did anything to actually influence decedent’s distribution of [his] assets” (Matter of Walker, 80 AD3d at 868; accord Matter of Stafford, 111 AD3d 1216, 1219 [2013]). In any event, under the circumstances of this case, such hearsay testimony would be insufficient to raise an issue of fact (see Kaufman v Quickway, Inc., 64 AD3d 978, 980-981 [2009], affd 14 NY3d 907 [2010]).

. The probable cause standard proffered by the dissent comes from the Restatement of Property, which, as noted, has not been adopted in this state *149 (see Restatement [Second] of Property [Donative Transfers] § 9.2). In that regard, the Restatement provides that “[a] beneficiary who in good faith questions in a legal proceeding the conduct of the fiduciary should presumptively be deemed to have probable cause” (Restatement [Second] of Property [Donative Transfers] § 9.2, Comment c). Thus, even if this were the appropriate standard to be applied, we would find that the evidence submitted by petitioners was more than sufficient to demonstrate a good faith basis for questioning the conduct of the nominated and successor executor. In response, not a scintilla of evidence was presented to contradict petitioners’ proof or otherwise rebut their showing.