OPINION OF THE COURT
Robert J. Gigante, S.
In this pending proceeding, Linda Navallo, the petitioner, *842 moves for summary judgment declaring the trust and deed transfer (hereinafter referred to as the trust documents) executed by Muriel Donaldson, the decedent and petitioner’s mother, void based on fraud, undue influence and lack of mental capacity. Respondents, Diane Morelli and Stephen Donaldson, oppose summary judgment.
Summary judgment should be granted only where it is clear that no triable issue of fact exists (Matter of Goldberg, 180 AD2d 528 [1992]). It is necessary for the movant to make a prima facie showing that he or she is entitled to summary judgment as a matter of law (Zuckerman v City of New York, 49 NY2d 557 [1980]). The objectant opposing summary judgment must then present affirmative proof that their claims are real and capable of being established at trial (Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27 [1979]). If there is any doubt as to the existence of a triable issue, the motion for summary judgment must be denied (Hantz v Fishman, 155 AD2d 415 [1989]).
Factual History
The decedent died at the ripe age of 88 years young, a domiciliary of Richmond County. She was widowed at the time of her death and left behind seven children, including the petitioner and the respondents. She lived alone in her marital home, but did receive help from some of her children, as well as outside sources. It is undisputed that the respondent, Diane Morelli, did contact Ted Parnese, Esq., the attorney who drafted the trust documents. Mr. Parnese did go to the decedent’s home to explain the documents drafted and to have them executed by the decedent. Mr. Parnese did not meet with the decedent nor speak to her privately prior to drafting the trust documents, but relied on the statements provided by Ms. Morelli. Mr. Parnese also relied on a letter written by Dr. Deba Banerji, the decedent’s treating doctor, that assessed the decedent’s mental capacity. The letter in its entirety consisted of three sentences: “Mrs. Muriel Donaldson was seen by me. She is a very independent minded person. She is noted to be in an acceptable mental status to help coordinate her care and is competent to direct her family and/or aides for her personal or financial needs.” The execution of the trust documents took place 61 days before the decedent passed away. It is also undisputed there were family disputes regarding the decedent’s bank accounts prior to her death, which included potential legal action against the petitioner. It is also important to note that the petitioner *843 discussed the potential for initiating a Mental Hygiene Law article 81 proceeding for her mother, but the guardianship proceeding never materialized.
Fraud
“To establish fraud, it must be shown that . . . petitioner knowingly made a false statement which altered the testamentary disposition that would have been made in the absence of such a statement” (Matter of Paigo, 53 AD3d 836, 838 [2008]). This burden, as well as showing the decedent relied on any such false statements in executing the trust and transfer documents, rests on the petitioner (Matter of Coniglio, 242 AD2d 901 [1997]). Without a showing that fraud was exercised on the decedent, evidence that opportunity and motive existed do not suffice to raise a triable issue (Matter of Zirinsky, 43 AD3d 946 [2007]). The petitioner failed to present substantial evidence of a knowingly false statement made by the respondent or any other person concerning the drafting of the trust documents. Therefore, the petitioner cannot void the trust documents based on fraud, upon a motion for summary judgment.
Undue Influence
The petitioner has the burden of proving the will was the product of undue influence. The influence exerted must amount to a moral coercion which restrained the decedent’s independent action and destroyed his free agency, or which constrained him to do something against his wishes (Matter of Walther, 6 NY2d 49, 53 [1959]). The petitioner did not present any substantial evidence to meet that burden. Mere conjecture and speculation is not enough to rise to the level of exercising undue influence.
Accordingly, the petitioner cannot void the trust documents based on undue influence, upon a motion for summary judgment.
Mental Capacity
A determination of whether or not trust documents should be voided based on the settler’s lack of mental capacity requires a much greater analysis of the facts and the law. It has been ingrained in the minds of attorneys that the requisite mental capacity to write a will is the lowest form of mental capacity amongst all legal documents. However, in order to determine the mental capacity standard, this court must first determine *844 whether the documents executed are more comparable to a will, therefore requiring a minimal mental capacity, or whether they are more similar to a contract, therefore requiring a higher mental capacity. (Matter of ACN, 133 Misc 2d 1043 [1986]; Matter of Rosen, 17 Misc 3d 1103[A], 2007 NY Slip Op 51818[U] [2007].) It is abundantly clear after reviewing the documents executed by the decedent that they are more comparable to a contract and therefore require a higher mental capacity than that of a will. The controlling standard in evaluating decedent’s capacity is not the lower standard for a testamentary instrument, but is rather the higher contract standard of capacity, which focuses on whether the person was able to understand the nature and consequences of a transaction and make a rational judgment concerning it (Matter of Goldberg, 153 Misc 2d 560 [1992]).
The next step in this analysis is to ascertain who bears the burden of proving or disproving whether the decedent had the proper mental capacity to execute the trust documents. Unlike testamentary capacity with respect to wills, where the proponent of a will bears the burden of proving testamentary capacity, with a trust document, the burden of proving incapacity is on the one who asserts it (Matter of Goldberg, 153 Misc 2d 560 [1992], citing Matter of Obermeier, 150 AD2d 863 [1989]).
Finally, the application of the facts to the law will determine whether or not the decedent had the requisite mental capacity to enter into the trust agreement and transfer the deed and other assets into the trust. At first glance, a peculiarity arises in that the decedent, as the grantor, created a supplemental needs trust naming herself as a lifetime beneficiary holding a life estate in her marital property, which she deeded to the trust. That is not to say the decedent did not understand the terms of the trust agreement upon execution, but the question arises as to why a supplemental needs trust was chosen as the vehicle to safeguard her finances. “Unless the grantor is free from disability to establish a trust, the attempt is void or voidable.” (76 Am Jur 2d, Trusts § 49.)
Additionally, Dr. Deba Banerji, the decedent’s treating physician, wrote a letter stating the decedent “is noted to be in an acceptable mental status to help coordinate her care and is competent to direct her family and/or aides for her personal or financial needs.” However, during the doctor’s deposition, he was asked hypothetically whether he thought the decedent would be able to read and understand a contract of sale and the *845 reply was ‘T don’t think so.” (Dr. Deba Banerji examination before trial [EBT], May 21, 2012, at 49, line 10 through 50, line 5.) The doctor was further asked,
“[w]hen you talked about acceptable mental status to coordinate her [the decedent’s] care and competent to direct her family and/or any aides for her personal and financial needs, you were really talking about day-to-day life and whether or not she needs an aide in the house or something of that type?”
The doctor’s response was “yes.” (Dr. Deba Banerji EBT, May 21, 2012, at 49, line 19 through 50, line 5.) It is important to note that Dr. Banerji performed neither a mental status test the day he drafted the letter, nor a complete neurological exam. The drafting attorney, Ted Parnese, Esq., relied solely on the letter drafted by Dr. Banerji to determine the decedent had the requisite mental capacity to execute the transfer documents. Mr. Parnese did not meet with the decedent, nor did he speak to her prior to executing the documents (Ted Parnese EBT, June 18, 2012, at 5, lines 16-20). He received his instructions on the drafting of the trust and deed transfer from the respondent, Diane Morelli (Ted Parnese EBT, June 18, 2012, at 10, line 20 through 11, line 10). Mr. Parnese did not perform any type of cognitive exam to determine the decedent’s mental capacity.
After Mr. Parnese was informed of Dr. Banerji’s testimony regarding the clarification of his letter, Mr. Parnese was asked, “You said that you based your opinion as to her [decedent’s] cognitive ability on a letter written by the doctor. Now, the doctor is explaining what he meant by that letter. Does that now change your opinion as to her cognitive ability to understand the trust?” (Ted Parnese EBT, June 18, 2012, at 25, lines 5-10.) Mr. Parnese answered, “If the doctor was to write that now in the letter, I wouldn’t feel the way I felt then at that moment.” (Ted Parnese EBT, June 18, 2012, at 25, lines 22-24.)
Indeed, the respondent failed to submit any rebuttal to the testimony of the treating physician, but merely made the conclusory statement that it is not enough to defeat summary judgment.
Based on the testimony provided by the treating physician and the drafting attorney and the lack of any opposing testimony or evidence of any kind, this court determines that the decedent did not have the requisite mental capacity to execute the trust documents.
*846 Conclusion
After having reviewed all of the papers heretofore submitted herein, both in support of the motion and in opposition thereto, the court grants the motion for summary judgment on the issue of mental capacity, and accordingly, determines that the trust and transfer deed documents are void and all assets placed into the trust, including the real property located at 11 Clawson Street, Staten Island, New York, must be returned to the estate of the decedent and administered in accordance with New York State laws of intestacy.