[920 NE2d 943, 892 NYS2d 836]

# In the Matter of the Estate of Joseph Singer, Deceased. Vivian Singer, Respondent; Alexander Singer, Appellant.

Argued October 15, 2009; decided December 15, 2009

**POINTS OF COUNSEL**

*Greenfield Stein & Senior, LLP,* New York City (*Gary B. Freidman* and *Jeffrey H. Sheetz* of counsel), for appellant. I. The Appellate Division's decision and order should be reversed because it misconstrued EPTL 3-3.5 (b) (3) (D) and SCPA 1404 (4) as absolute limitations on a beneficiary's inquiry into the validity of a will, rather than as safe harbors, contrary to the twin policy objectives of those provisions. (*Matter of Muller,* 138 Misc 2d 966; *Matter of Marshall,* 11 Misc 3d 674.) II. The Appellate Division's decision and order should also be reversed because it conflicts with prior case law requiring at least the propounding of objections before a forfeiture under an in terrorem clause can be found. (*Matter of Stiehler,* 133 Misc 2d 253; *Matter of Ellis,* 252 AD2d 118, 93 NY2d 805; *Matter of Fairbairn,* 46 AD3d 973, 10 NY3d 708; *Matter of Cronin,* 143 Misc 559, 237 App Div 856; *Matter of Robbins,* 144 Misc 2d 510.)

*Law Office of Jack Kint,* New York City (*Jack M. Kint, Jr.,* of counsel), for respondent. I. The Appellate Division correctly affirmed the Surrogate's judgment that Alexander Singer violated Rabbi Singer's no-contest conditions. (*Matter of Ellis,* 252 AD2d 118; *Matter of Fabbri,* 2 NY2d 236; *Williams v Jones,* 166 NY 522; *Matter of Bieley,* 91 NY2d 520; *Matter of Lang,* 60 Misc 2d 232; *Eidt v Eidt,* 203 NY 325; *New Amsterdam Cas. Co. v Stecker,*

3 NY2d 1; *Matter of Cohn,* 29 Misc 2d 661; *Matter of Stiehler,* 133 Misc 2d 253; *Matter of Fairbairn,* 46 AD3d 973, 10 NY3d 708.) II. The Appellate Division correctly affirmed the Surrogate's judgment that the statutory safe harbor for preliminary discovery did not protect Alexander Singer's examination of the attorney who drafted Rabbi Singer's prior will. (*Pultz v Economakis,* 10 NY3d 542; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471; *Matter of Kirkholder,* 86 Misc 692; *Smithsonian Institution v Meech,* 169 US 398; *Matter of Roth,* 7 Misc 3d 1010[A], 2005 NY Slip Op 50521[U]; *Matter of Zurkow,* 74 Misc 2d 736; *Matter of Ellis,* 252 AD2d 118; *Gentile v State Bar of Nev.,* 501 US 1030; *Matter of Clark,* 52 Misc 2d 965; *Pajak v Pajak,* 56 NY2d 394.) III. The Appellate Division correctly affirmed the Surrogate's judgment that Alexander Singer must forfeit his inheritance. (*Matter of Pritchard,* 138 Misc 2d 945; *Matter of Ellis,* 252 AD2d 118; *Board of Educ. of Half Hollow Hills Cent. School Dist., Towns of Huntington & Babylon v Roseman,* 52 AD2d 855; *Matter of Muller,* 138 Misc 2d 966.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

We conclude that the statutory safe harbor provisions of Surrogate's Court Procedure Act § 1404 and Estates, Powers and Trusts Law § 3-3.5 are not exhaustive and that, under the circumstances of this case, respondent Alexander Singer's conduct did not violate the in terrorem clauses of the decedent's probated will.

Rabbi Joseph Singer executed a last will and testament dated April 15, 2003, appointing his daughter, Vivian, as executor. Under the terms of the corresponding revocable trust agreement, testator directed that his Brooklyn home, the bulk of his tangible personal property and the sum of $200,000 were bequeathed to Vivian "in recognition of her unusual dedication to [testator] and for the taking care of [testator. Testator] realizes that his daughter gave her life to take care of him and feels a great sense of gratitude toward her." The trust agreement also provided that each of Alexander's sons would receive $15,000 and the remainder of the estate would be split equally between Vivian and Alexander.

The will contained two in terrorem clauses—one that was directed to any beneficiary and the other applicable to Alexander in particular. The first in terrorem clause provides:

"If any beneficiary shall, in any manner, directly or indirectly, contest, object to or oppose, or attempt to contest, object to or oppose, the probate of or validity of this Will or the revocable trust agreement created by me, or any part of my estate plan or any gifts made by me, or any of the provisions of this Will or of the revocable trust agreement created by me, in any court or commence or prosecute any legal proceeding of any kind in any court to set aside this Will or the revocable trust agreement created by me or any part of my estate plan or any gifts made by me, then in that event, such beneficiary, and all of such beneficiary's issue, shall forfeit and cease to have any right or interest whatsoever under this Will or under the revocable trust agreement created by me, or in any portion of my estate, and, in such event, I hereby direct that my estate and the trust estate under such revocable trust agreement shall be disposed of in all respects as if such beneficiary had predeceased me without issue."

The following paragraph, pertaining to Alexander, stated:

"I specifically direct that my son, Alexander I. Singer, not contest, object to or oppose this Will or The Joseph Singer Revocable Trust Agreement, or any part of my estate plan or any gifts made by me, and I specifically direct that my son not take my daughter, Vivian S. Singer, to a Bet Din (religious court) or to any other court for any reason whatsoever; and I specifically direct that if my son takes any such action or brings on any such proceeding, neither my son nor any of his issue shall receive any share of my estate, whether passing under this Will, under The Joseph Singer Revocable Trust Agreement or otherwise."

Similar clauses appeared in the revocable trust agreement.

Rabbi Singer died March 5, 2004 and Vivian submitted the will for probate March 25, 2004. The following day, Alexander served a notice of discovery and inspection under CPLR article 31 and SCPA 1404 seeking copies of various documents and the deposition of certain witnesses, including Singer's previous attorney, Joseph Katz. Vivian's attorney wrote a letter to Alexander's counsel, expressing his concern that Mr. Katz was not a proper witness for an SCPA 1404 examination and

indicating his belief that Alexander would be contesting the will within the meaning of the in terrorem clause by such examination, thereby forfeiting any inheritance. Alexander's attorney disagreed and proceeded to depose Mr. Katz.

Katz testified that he had no reason to believe that Rabbi Singer lacked testamentary capacity or that Vivian exercised undue influence over him. Katz explained that he had drafted the Rabbi's seven previous wills and indicated that there had been a history of conflict between the siblings concerning how the Rabbi's estate would be distributed. In addition, Katz testified that the previous will he had drafted in 2002 had also contained an in terrorem clause in order to reassure Vivian that Alexander would not contest the estate plan.

The will was admitted to probate May 19, 2005. The decree specified that objections had not been filed and probate had not been contested. Vivian then commenced this construction proceeding, seeking a declaration that Alexander violated the in terrorem clauses of the will by deposing Mr. Katz.

Surrogate's Court determined "that examination of parties not specified in SCPA 1404 (4) violates an in terrorem clause" and that Alexander had violated the discovery limits established by the Legislature (17 Misc 3d 365, 369 [2007]). The court then determined that Alexander violated the in terrorem clauses of testator's will and revoked his bequest. The Appellate Division affirmed, finding that Alexander's conduct violated the in terrorem clauses as an attempt to contest the will and that the deposition of testator's former attorney did not fall within the safe harbor provisions of EPTL 3-3.5 and SCPA 1404 (52 AD3d 612 [2d Dept 2008]). We granted leave to appeal (11 NY3d 716 [2009]) and now reverse.

The paramount consideration in will construction proceedings is the testator's intent (*Matter of Fabbri*, 2 NY2d 236, 239 [1957]). In that context, while in terrorem clauses are enforceable, they are "not favored and [must be] strictly construed" (*Matter of Fairbairn*, 46 AD3d 973, 974 [3d Dept 2007] [citation omitted], *lv denied* 10 NY3d 708 [2008]). Despite the presence of an in terrorem clause in a will, EPTL 3-3.5 provides that certain conduct by a beneficiary will not result in forfeiture— specifically, as relevant here, "[t]he preliminary examination, under SCPA 1404, of a proponent's witnesses, the person who prepared the will, the nominated executors and the proponents in a probate proceeding" (EPTL 3-3.5 [b] [3] [D]). Under the

SCPA, these individuals "may be examined as to all relevant matters which may be the basis of objections to the probate of the propounded instrument" (SCPA 1404 [4]).

The issue presented here is whether Alexander violated the in terrorem clauses by going beyond the statutory safe harbor and deposing testator's former attorney. Although the statutes include only a few particular groups, circumstances may exist such that it is permissible to depose persons outside the statutory parameters without suffering forfeiture.

The Practice Commentaries indicate that the trend has been for courts "to allow broad latitude in discovery of matters that could provide the basis for objections" and that the Legislature intended to balance the testator's right to prevent unwarranted will contests against the beneficiary's right to investigate in order to evaluate the risk involved in contesting the will notwithstanding the in terrorem clause (Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 1404, at 178-179; Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 3-3.5, at 451-452).

Moreover, when the statutes were amended in 1992 to allow for the examination of the preparer of the will, the Legislature indicated that the amendments were intended to ratify the public policy stated in *Matter of Muller* (138 Misc 2d 966 [Sur Ct, Nassau County 1988]), which had interpreted EPTL 3-3.5 broadly to allow the production of prior wills (L 1992, ch 127). The court in *Muller* noted that there is only a small risk that a potential objectant will pursue frivolous objections with the threat of complete disinheritance hanging overhead in the form of an in terrorem clause (*see Muller*, 138 Misc 2d at 968).

Since the statutory safe harbor is not exclusive, the crucial inquiry is whether this conduct violated the testator's intent. Although it is clear that Rabbi Singer intended to prevent Alexander from contesting the will, these in terrorem provisions can reasonably be interpreted to express testator's wish that Alexander not commence court proceedings of any type against the estate plan. The first clause seeks to prevent any beneficiary from contesting or attempting to contest the will or the trust agreement "in any court" and to prevent any legal proceeding to invalidate either document. Further, the clause that is specific to Alexander directs that he not take his sister "to a Bet Din (religious court) or to any other court for any reason whatsoever."

Under these circumstances, and construing the clauses narrowly, the conduct of this deposition did not amount to an attempt to contest, object to or oppose the validity of the estate plan. Interpreting the clauses too broadly would frustrate the public policy of ensuring that wills are genuine and valid before they are admitted to probate (*see* SCPA 1408 [1] ["Before admitting a will to probate the court must inquire particularly into all the facts and must be satisfied with the genuineness of the will and the validity of its execution"]).

Here, Alexander deposed decedent's former attorney. Katz had represented decedent for years and had prepared seven prior testamentary documents, including a 2002 will, on his behalf. As such, Katz was clearly a person whom one would expect to have knowledge that was relevant to whether this will, executed in 2003, was the product of undue influence. Alexander conducted the examination of Katz for the purpose of gathering information in order to make an informed decision as to how to proceed.

Both the purpose of testator's in terrorem clause and the general public policy were satisfied here, since Alexander's investigation led him to the conclusion that there was no basis upon which to file objections or contest the will. A broader construction of these clauses as manifesting testator's intent to preclude the examination of this witness would essentially cut off all other persons from being asked for information, no matter the potential value or relevance of that information—even as to the medical or psychological condition of the testator at the time the will was executed. Interpreting these clauses narrowly will allow surrogates to address on a case-by-case basis whether the conduct undertaken is in keeping with the testator's intent.

Accordingly, the order of the Appellate Division should be reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and the matter remitted to Surrogate's Court for further proceedings in accordance with this opinion.

GRAFFEO, J. (concurring). I write separately to explain my understanding of the rule being applied in this case. The common law recognized the validity of an in terrorem clause and the right of a testator to restrict beneficiaries from attempting to undermine the validity of a will. As our opinion notes, in terrorem clauses are not favored since they may

result in a total forfeiture of a bequest and—because of this serious consequence—they must be strictly construed to conform to the testator's expressed intent (*see e.g. Matter of Fairbairn*, 46 AD3d 973, 974 [3d Dept 2007], *lv denied* 10 NY3d 708 [2008]).

EPTL 3-3.5 and SCPA 1404 altered the common law. In enacting these statutes, the Legislature made a public policy decision that beneficiaries should be able to engage in certain inquiries pertaining to the circumstances surrounding the drafting of a will without risking forfeiture, even if the testator expressed an intent to make the will impervious to such future challenges (*see e.g.* Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 3-3.5, at 451-452). Thus, the Legislature decided that even the most carefully worded in terrorem clause cannot prevent a beneficiary from taking the deposition of "a proponent's witnesses, the person who prepared the will, the nominated executors and the proponents in a probate proceeding" (EPTL 3-3.5 [b] [3] [D]) as a preface to deciding whether to file objections or contest a will.

Because we are required to construe the in terrorem clauses at issue here narrowly, we found it reasonable to conclude that the language of this will did not specifically impose forfeiture once Alexander Singer deposed the attorney who drafted his father's prior wills. Thus, the safe harbor provisions set forth in SCPA 1404 and EPTL 3-3.5 are inapplicable and the fact that the testator's former attorney does not fall into one of the categories of persons listed in the statutes is irrelevant in this case.

I believe, however, that an in terrorem clause can be properly drafted to explicitly prohibit this type of inquiry. A testator could, for example, draft an in terrorem clause that incorporates the statutorily-authorized preliminary examinations by explicitly stating that a beneficiary who makes or attempts to make any inquiry about the will other than those permitted by EPTL 3-3.5 and SCPA 1404 shall forfeit his or her bequest and extinguish any interest that the beneficiary's issue may have in the estate. If Joseph Singer's will had an in terrorem clause of this nature, I would be inclined to hold that the examination of the attorney who drafted the prior wills resulted in the forfeiture of Alexander's bequest.

With these thoughts, I join today's decision.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge GRAFFEO concurs in a separate concurring opinion in which Judges READ and SMITH concur.

Order reversed, etc.