Carlson v Colangelo (2025 NY Slip Op 02264)

Carlson v Colangelo

2025 NY Slip Op 02264

Decided on April 17, 2025

Court of Appeals

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 17, 2025

No. 38 

[*1]Kristine M. Carlson, Appellant,
v
Crissy Colangelo, & c. et al., Respondents.

Irma K. Nimetz, for appellant.
Michael J. Konicoff, for respondent.

RIVERA, J.

Plaintiff is a beneficiary of a revocable trust that, she asserts, entitles her to certain real property and income. The trust includes an in terrorem clause, which dispossesses a beneficiary or other challenger who contests or seeks to nullify the trust. The issue on this appeal is whether plaintiff triggered the clause when she commenced the underlying action against the trustee and thereby forfeited her bequests. We conclude that because plaintiff did not seek to challenge the trust, but merely sought to enforce its provisions as the grantor wrote and intended them, she did not violate the in terrorem clause. We further conclude that plaintiff is entitled to summary judgment on her claim to the real property and that triable issues of fact remain as to the other remaining causes of action. The order of the Appellate Division is modified accordingly.
I.
A.
Plaintiff Kristine M. Carlson had a romantic relationship with Donald P. Dempsey commencing in 2004. In 2005, Dempsey was diagnosed with a serious medical condition and plaintiff, a registered nurse, dedicated herself to his care until his death in 2015. Plaintiff alleges that in 2013, Dempsey asked her to sell her house and move into his home at 122 Eton Downs, Cortlandt Manor, New York, which she did. Plaintiff also alleges that she had a business relationship with Dempsey. She claims that in 2005, she transferred $100,000 to defendant Dempsaco LLC, an entity that Dempsey had formed to purchase commercial real estate.
Defendant Crissy Colangelo is the daughter of one of Dempsey's prior romantic partners. Dempsey provided for both plaintiff and defendant in his last will and testament and his revocable trust.
Dempsey's will named defendant as Executor, as well as both a principal beneficiary and the residual beneficiary. The instrument was a pour-over will, which upon death "pours" into a living trust any of a decedent's assets not previously transferred to the trust during their lifetime (see Black's Law Dictionary [12th ed 2024], will; "Pour-over" provisions from will to inter vivos trust, 12 ALR3d 56, § 1 [a] [Originally published in 1967]). In the event that Dempsey's trust was deemed invalid or otherwise not in existence, the will bequeathed to plaintiff the following:
"I give, devise and bequeath all of my interest and to the real property and personal residence located at 122 Eton Downs, Cortlandt Manor, New York 10567, together with all rights I may have under any policies of insurance thereon, but subject to any obligations secured thereby [collectively, 'the Premises'], to KRISTINE M. CARLSON . . . if she survives me, or if she does not survive me, to her then living issue, per stirpes . . .
I give and bequeath all of my interest in and to Dempsaco LLC, a limited liability company operating at 122 Waterbury Manor, Cortlandt Manor, New York 10567, to CHRISSY [sic] COLANGELO, . . . if she survives me, and I direct that when the real property owned by the company is sold, the company shall distribute the sum of Three Hundred Fifty Thousand ($350,000.00) dollars to KRISTINE M. CARLSON, if she is then living, or if she is not then living, to her then living issue, per stirpes."
Dempsey also created the Donald P. Dempsey Revocable Trust and named Colangelo the Trustee and a beneficiary. In the Trust, he provided plaintiff with real property and an income stream as follows:
"After application of paragraph A of this Article, the Trustee shall distribute all of the Grantor's interest or this Trust's interest in and to Dempsaco LLC, . . . to CRISSY COLANGELO . . . It is the Grantor's sincere wish and desire that CRISSY COLANGELO, provide a stream of income, not to exceed the sum of Three Hundred Fifty Thousand ($350,000.00) in total, to KRISTINE M. CARLSON, . . . if she is then living, or if she is not then living, to her then living issue, per stirpes . . .
After application of paragraphs A and B of this Article, the Trustee shall distribute all of the Grantor's interest or this Trust's interest in and to 122 Eton Downs, Cortlandt Manor, New York 10567, to KRISTINE M. CARLSON, presently residing at 122 Eton Downs, Cortlandt Manor, New York 10567, if she survives the Grantor, or if she does not survive the Grantor, to her then living issue, per stirpes."
Both instruments included similar in terrorem clauses. The clause in the Trust states, in relevant part:
"In the event that any heir, distributee, beneficiary, agency, organization or other individual ("challenger") shall contest any aspect of this Trust, or the distribution of the Grantor's assets pursuant to his Last Will, inter vivos Trust Agreement, beneficiary designations or non-probate beneficiary designations, or shall attempt to set aside, nullify, contest, or void the distribution thereof in any way, then the Grantor directs that such rights of such challenger shall be ascertained as they would have been determined had that challenger predeceased the execution of this instrument and the Grantor, without living issue."[FN1]
B.
Approximately two-and-a-half years after Dempsey's death, the Trustee's counsel informed plaintiff by letter of the Premises and stream-of-income bequests.[FN2] The letter explained that Colangelo, as Trustee, had decided that Dempsey "used precatory language" regarding distribution of the stream of income; that Dempsey overestimated his estate; that the Trustee and Dempsaco lacked funds or assets "to pay anything to [plaintiff];" and "[t]his is why [Dempsey] used the precatory language, so as to afford [defendant] discretion."
The correspondence included a demand that plaintiff release Colangelo from all liability and waive all of plaintiff's rights to the stream of income, in exchange for transfer of the Premises to plaintiff. Counsel included a proposed "Receipt, Release and Indemnity Agreement" for plaintiff's signature.[FN3] Plaintiff refused to sign the release and requested transfer of the Premises and cash, as well as a copy of the entire trust document. Colangelo failed to make the distributions or provide the document.
After several failed attempts by plaintiff to resolve the parties' impasse, plaintiff commenced the underlying action in Supreme Court against Colangelo, as Trustee and in her individual capacity, and against Dempsaco LLC. Plaintiff's complaint alleges that her transfer in 2005 of $100,000 to Dempsaco was an investment, through which she became [*2]a 50% member of the company. It also alleges that Colangelo, as Trustee, had "breached her fiduciary duty to Plaintiff by commingling, self-dealing and misusing funds belonging to Dempsaco" and had "been unjustly enriched at the expense of, and to the detriment of Plaintiff and Dempsaco." Plaintiff demanded relief including an injunction directing the Trust to distribute the Trust's interest in the Premises to plaintiff; a declaration that plaintiff is a 50% member of Dempsaco; a declaration that plaintiff is entitled to the income stream; compensatory damages not less than $350,000; punitive damages; an accounting of Dempsaco's income and expenses since Dempsey's death; and the imposition of a constructive trust on Dempsaco's proceeds.
Defendants moved to dismiss. They argued that plaintiff's assertion that the payment of the income stream was mandatory, rather than discretionary, triggered the Trust's in terrorem clause. Supreme Court denied the motion, explaining that outstanding factual issues precluded a determination that, as a matter of law, plaintiff's complaint triggered the clause. Before completion of discovery, defendants moved for partial summary judgment, without invoking the in terrorem clause, arguing that plaintiff was not a member of Dempsaco. Plaintiff opposed defendant's motion and cross-moved for partial summary judgment, asserting that she was entitled to the Premises. Supreme Court granted defendant's motion and denied plaintiff's motion, holding that plaintiff failed to establish any ownership interest in Dempsaco. The court further explained that while "the Trust clearly evinces an intent to transfer the Premises to plaintiff," it was obliged to delay resolving plaintiff's claim for the Premises until after it determined whether plaintiff's lawsuit triggered the in terrorem clause. Plaintiff did not appeal this decision.
Defendants again moved for summary judgment, this time arguing that plaintiff's unsuccessful claim of a 50% interest in Dempsaco triggered the in terrorem clause. Plaintiff opposed the motion, responding that her action was meant to construe and enforce the Trust, not to contest it. Plaintiff also moved for summary judgment on her claims concerning the Premises, the income stream, and the Trustee's alleged unjust enrichment. Supreme Court granted defendants' motion, concluding that "[t]he clear intent of the grantor, as gleaned from the Trust, was to prevent . . . conduct that would delay or dilute the dispositions under the Trust, place the Grantor's game plan in jeopardy, and threaten Colangelo's clear right to Dempsaco LLC. . . . It cannot be disputed that Plaintiff contested the distribution of the Grantor's 100% interest in Dempsaco to Colangelo under the Trust." The court also awarded defendants attorney's fees. Plaintiff appealed and the Appellate Division granted a stay of enforcement of Supreme Court's order.
On the merits, the Appellate Division modified Supreme Court's order by denying defendants' motion for attorney's fees and otherwise affirmed (221 AD3d 773 [2d Dept 2023]). The Appellate Division concluded that "plaintiff contested the distribution of Dempsey's interest in Dempsaco in violation of the in terrorem clause" (id. at 775). Finally, the Court determined that plaintiff's remaining contentions—concerning the Premises, the income stream, and unjust enrichment—were academic. We granted plaintiff leave to appeal (41 NY3d 908).[FN4]
[*3]II.
Plaintiff argues that the mere commencement of her lawsuit, which includes her Dempsaco ownership claim, did not trigger the in terrorem clause.[FN5] Defendants respond that plaintiff triggered the in terrorem clause by contesting the distribution of Dempsey's interest in Dempsaco. Defendants further contend, as Supreme Court held, that plaintiff's conduct in disregard of Dempsey's wishes trumps the Trustee's alleged public policy violation.
We conclude that because plaintiff's lawsuit seeks to enforce the Trust provisions as written and intended by the grantor, plaintiff did not attempt to nullify the Trust or challenge its terms. Thus, plaintiff did not violate the in terrorem clause and defendant is not entitled to summary judgment. We further conclude that plaintiff has established her right to summary judgment on her first cause of action regarding her ownership rights to the Premises and her motion should be granted to that extent.
A.
"On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party. The movant must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Once this showing has been made, . . . the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Bazdaric v Almah Partners LLC, 41 NY3d 310, 316 [2024] [internal quotation marks and citations omitted]).
In addressing wills, we have explained that "while in terrorem clauses are enforceable, they are 'not favored and [must be] strictly construed' " (Matter of Singer, 13 NY3d 447, 451 [2009], quoting Matter of Fairbairn, 46 AD3d 973, 974 [3d Dept 2007]). When interpreting in terrorem clauses in trust agreements, lower courts have consistently applied these same rules (see e.g., Matter of Neva M. Strom Irrevocable Tr. III, 203 AD3d 1255, 1256 [3d Dept 2022]; Matter of Tumminello v Bolten, 59 AD3d 727 [2d Dept 2009]). We now clarify that in terrorem clauses in trust agreements, like those in wills, are enforceable but not favored, and must be strictly construed.
When construing a trust agreement, "a court must first look within the four corners of a trust instrument to determine the grantor's intent" (Matter of Piel, 10 NY3d 163, 166 [2008]). We are mindful that in terrorem clauses are "normally used to deter challenges to the validity of various types of donative instruments and their provisions, thus generally serving purposes other than inhibiting litigation to enforce a trust created by the instrument" (Restatement [Third] of Trusts § 96, Comment a; see also Restatement [Third] of Property [Wills & Don. Trans.] § 8.5).
[*4]B.
We now consider whether plaintiff's complaint amounts to a contest to the Trust within the meaning of the in terrorem clause. The complaint seeks transfer of the Premises, a declaratory judgment that she is a 50% member of Dempsaco, an accounting of Dempsaco's expenses and income received after Dempsey's death, distribution of amounts due plaintiff as Dempsaco's 50% member, an order that all proceeds owed or allocable to plaintiff be held for her benefit in a constructive trust, and damages incurred through Colangelo's or the Trust's unjust enrichment.[FN6]
None of these causes of actions and demands for relief contests the legality of the Trust instrument. For example, the complaint nowhere asserts that the Trust was created in violation of law. There is no express or implied claim that the Trust was not properly executed (see EPTL 7-1.17), or that the Trust lacks a beneficiary, a trustee, a trust res, or delivery of the res (see In re Gillette, 195 Misc 2d 89, 90 [Sur Ct, Broome County 2003]; 106 NY Jur 2d, Trusts § 58 [Feb. 2025 update]). Nor did the complaint allege that the grantor lacked mental capacity to create the Trust (see In re Estate of Donaldson, 38 Misc 3d 841, 843-844 [Sur Ct, Richmond County 2012]; 106 NY Jur 2d, Trusts § 59) or that he was subject to duress or undue influence (see Kazaras v Manufacturers Tr. Co., 4 AD2d 227, 237-239 [1st Dept 1957], affd, 4 NY2d 930 [1958]).
Nor does plaintiff challenge any of the Trust's bequests. To the contrary, she seeks distribution of her bequests in full accord with the Trust and in satisfaction of the grantor's intent. First, it is undisputed that the Trust directs the Trustee to "distribute all of the Grantor's interest or this Trust's interest in and to [the Premises] to Kristine M. Carlson" or to her issue, if she did not survive the grantor. Thus, there can be no argument that her request for this distribution triggers the in terrorem clause.
Second, plaintiff's claim that she is a 50% member in Dempsaco likewise does not amount to a challenge to the Trust or to the grantor's intent. The Trust provides that "all of the Grantor's interest or this Trust's interest in and to Dempsaco LLC" would be distributed to defendant Colangelo. Plaintiff sought a declaration of her interests in Dempsaco—a legal affirmation that in no way undermines distribution of the grantor's interest as provided in the Trust. Nevertheless, defendants contend that plaintiff's mere allegation of an interest in Dempsaco constitutes a challenge to Dempsey's interest in the company which is effectively a challenge to Colangelo's interest, and thus to the Trust itself. We disagree. Nowhere does the Trust declare that the grantor is the sole member of Dempsaco or that he holds a 100% interest in the company. It is hornbook law that a person can transfer no more than they legally own or control (see e.g., Kasowitz, Benson, Torres & Friedman, LLP v JPMorgan Chase Bank, N.A., — NY3d &mdash, &mdash, 2024 NY Slip Op 05876, *4 [2024] ["(a) grantor can transfer no better right or title than (they have)"] [internal quotation marks omitted]). Since Dempsey could only transfer to Colangelo his own interests, plaintiff's action to recognize her alleged 50% membership in Dempsaco is not a challenge to the Trust's distribution of any part of Dempsey's interest in the company. Plaintiff merely seeks what she asserts is hers and nothing more.[FN7] Thus, her claim does not trigger the in terrorem clause and result in a forfeiture of her bequests under the Trust.
Nor does the fact that Supreme Court concluded that plaintiff failed to establish any interest in Dempsaco affect our analysis. According to defendants, it is plaintiff's failure to establish this interest that triggered the in terrorem clause. We disagree. The triggering event depends on the nature, and not the merits, of the plaintiff's claim.[FN8] Perhaps a claim concerning putative trust property might be so frivolous, so plainly contrary to the grantor's intent, or so based in bad faith as to essentially contest the Trust [*5]itself (cf. Matter of Neva M. Strom Irrevocable Tr. III, 203 AD3d at 1257).[FN9] Plaintiff's claim here raises no such concern. Defendants have offered no basis for concluding—and we see none—that plaintiff functionally challenged the Trust by formally requesting a declaration of her rights.
The purpose of the in terrorem clause is to discourage challenges to the Trust that would upset the grantor's distributive intent. An action like plaintiff's, meant to require the Trustee to distribute the Trust in accordance with its stated provisions, is not a challenge to the grantor's distributive plan.[FN10] Indeed, it would be contrary to the grantor's intent to hold that a party cannot file an action to receive exactly that which the grantor set aside for transfer to their named beneficiary.[FN11]
[*6]III.
The Second Department's reliance on its prior decisions in Matter of Ellis and Matter of Tumminello was misplaced. In Matter of Ellis, the Second Department held that an in terrorem clause in the subject will was intended to prevent "conduct that would delay the probate of the will, place the testamentary scheme in jeopardy, and harass [the executrix]" (Matter of Ellis, 252 AD2d 118, 128 [2d Dept 1998]). Supreme Court here relied on the same language to support its conclusion that plaintiff's claim to a 50% interest in Dempsaco violated the Trust's in terrorem clause. But the clause at issue in Ellis was broader than that in Dempsey's Trust. Dispositively, the clause in Ellis "prohibited a beneficiary, 'in any manner, directly or indirectly', from contesting the will" (id.). Dempsey did not use that language in his trust instrument. Instead, he chose to prohibit any individual from "contest[ing] any aspect of this Trust, or the distribution of the Grantor's assets" or "attempt[ing] to set aside, nullify, contest or void the distribution there of in any way." Defendants have presented no persuasive argument, as we have explained, that plaintiff contested the Trust instrument or any distribution thereunder. Tumminello also is distinguishable, as that case involved a petitioner who had sought to have the trust declared null and void in a prior guardianship proceeding (Matter of Tumminello, 59 AD3d at 728). So far as we may consider, plaintiff here seeks to enforce the Trust, not to nullify it, and for good reason. As plaintiff argues, she would recover nothing if the trust were nullified and thus she has no interest in contesting its terms, only in enforcing Dempsey's intent, including that she receive his interest in the home they shared until his death.
Supreme Court also misapplied Ellis in interpreting the in terrorem clause adopted by Dempsey. Contrary to the court's assertion, the trust instrument does not clearly establish that the grantor's intent "was to prevent the very type of conduct at issue, i.e. conduct that would delay or dilute the dispositions under the Trust, place the Grantor's game plan in jeopardy and threaten [Colangelo's] clear right to Dempsaco." Rather, the instrument reveals an intent to do three things as relevant to this appeal: transfer the Premises to plaintiff; transfer the grantor's interest in Dempsaco to Colangelo; and, arguably, provide plaintiff with a stream of income from Dempsaco up to $350,000. Plaintiff's action does not undermine achievement of these three goals or dilute the bequests to Colangelo, because Colangelo is only entitled to the grantor's share of Dempsaco, not the bequests to plaintiff.
As for any delay that plaintiff's action may have caused, her request for an accounting is within her legal rights (see Matter of Chiantella v Vishnick, 84 AD3d 797 [2d Dept 2011]; CPLR 7701). On this point, Matter of Singer is also instructive, indicating that a beneficiary generally has a "right to investigate in order to evaluate the risk involved in contesting the will notwithstanding the in terrorem clause" (13 NY3d at 452). Moreover, plaintiff further contends that defendant breached her fiduciary duty and violated public policy by demanding plaintiff sign the indemnification agreement. Colangelo bears at least partial responsibility for any delay in distribution by refusing transfer of the Premises and demanding plaintiff waive her rights, in violation of long-standing public policy. On that score, Supreme Court erroneously held that plaintiff's public policy claim "is trumped by Plaintiff's disregard for Grantor's last wishes."[FN12] As [*7]we discuss, plaintiff's action to protect her interest in the Premises was wholly consistent with the grantor's intent.
IV.
Having rejected defendants' claim that plaintiff forfeited her bequests by commencing this lawsuit, we now turn to plaintiff's cross-motion for summary judgment on her first, second and fourth causes of action. We conclude that the motion should be granted in part and the case remitted for further consideration as to the remaining matters.
The first cause of action seeks recognition of plaintiff's title to the Premises. The Trust provides that "the Trustee shall distribute all of the Grantor's interest or the Trust's interest" in the Premises to plaintiff. Defendants do not dispute this plain directive to the Trustee, but rely only upon the in terrorem clause. As we have explained, plaintiff's action did not trigger the clause, and she is therefore entitled to judgment as a matter of law on this cause of action.
The second cause of action requests a stream of income in the sum of $350,000. The Trust states that, "[i]t is the Grantor's sincere wish and desire" that Colangelo, "provide a stream of income, not to exceed . . . $350,000.00" to plaintiff if she survives grantor and if not, "to her then living issue." The parties dispute whether the Trust mandates distribution of the funds or leaves it to the discretion to the Trustee. Supreme Court noted in its decision and order denying defendant's pre-answer motion to dismiss that the express inclusion of a specific amount of income—$350,000—and a named recipient of those funds—plaintiff—could evince the grantor's intent for "an express, binding direction clothed in the language of civility" (citing Matter of Martin, 32 AD2d 849 [3d Dept 1969]). As the court further recognized, "[t]he fact that a bequest or devise is expressed in the form of a wish or desire does not necessarily defeat it" (citing Matter of Alexejew [Sur Ct, Nassau County 1994]). "Although words such as request, wish, and desire are ordinarily read as precatory," such words may be read as expressing a "command" in light of other evidence of the grantor's intent (106 NY Jur 2d, Trusts § 141, citing Matter of Martin, 32 AD2d at 850). Plaintiff contends that no factual issues remain because Dempsey's will and the notes of the attorney who drafted the will and the trust reaffirm that Dempsey's unequivocal intent was to provide this income stream to plaintiff. However, these references to external materials do not conclusively resolve the question of the grantor's intent. Thus, triable issues of material fact exist as to the proper construction of this Trust language, foreclosing summary judgment on this issue.
The fourth cause of action seeks damages under an unjust enrichment theory. Since we hold that plaintiff has prevailed on her first cause of action and the matter must be remitted for resolution of plaintiff's second cause of action concerning the income stream, any award of damages must be considered, in the first instance, by Supreme Court.
Accordingly, the order of the Appellate Division insofar as appealed from should be modified, without costs, by denying defendants' motion for summary judgment dismissing the remainder of the complaint and granting plaintiff's cross-motion for summary judgment in accordance with this opinion, and, as so modified, affirmed

GARCIA, J. (dissenting):

Decedent established a revocable trust with a broad in terrorem clause providing that any party entitled to a bequest who challenged the Trust or the distribution of decedent's assets in any way forfeited those bequests. Plaintiff, a beneficiary of the Trust, filed an action in Supreme Court against the Trustee (defendant) and decedent's limited liability company, Dempsaco LLC (Dempsaco), contesting the distribution of certain of decedent's assets. Because plaintiff's lawsuit challenged the decedent's intended distribution of his assets as provided for in the Trust, I would hold, as did both courts below, that plaintiff triggered the in terrorem clause and so would affirm the Appellate Division's order. The majority's holding to the contrary, based on a false construct that plaintiff "merely sought to enforce" the provisions of the Trust (majority op at 2), ignores both our longstanding approach to the construction of testamentary documents and plaintiff's conduct, and I therefore dissent.
Plaintiff, at one time decedent's nurse, had a romantic relationship with him and lived with him in his home for several years. One month before his death, decedent established a revocable trust (the Trust) and corresponding will. Two provisions in the Trust discuss bequests to plaintiff. First, article 6 (b) of the trust provides that, after decedent's tangible personal property and insurance policies have been distributed to defendant, "the Trustee shall distribute all of the Grantor's interest or this Trust's interest in and to Dempsaco LLC" to defendant and "[i]t is the Grantor's sincere wish and desire that [Trustee] provide a stream of income, not to exceed the sum of [$350,000], in total, to [plaintiff]." After that, "the Trustee shall distribute all of the Grantor's interest or this Trust's interest in" the home where plaintiff and decedent lived to plaintiff.
Plaintiff alleged in her complaint that "Decedent told Plaintiff that in exchange for her $100,000 investment, Plaintiff would be a 50% owner of" Dempsaco and that defendant "erroneously believes that . . . she is the 100% owner of Dempsaco" and "has unfettered, and sole discretion conferred upon her by the Trust to determine whether Dempsaco must pay Plaintiff the income promised to her in the Trust." She also alleged that defendant refused to transfer the home to plaintiff unless plaintiff signed an onerous release and indemnification agreement. Plaintiff's complaint sought a ruling directing [*8]the Trust to distribute her interest in the home, a ruling that she was a 50% owner of Dempsaco "and is entitled to the income stream set forth in . . . the Trust," an award of compensatory damages of no less than $350,000 (the same total amount she alleged she was entitled to under the stream of income provision of the Trust), assorted costs and punitive damages of no less than $1,000,000, an accounting of Dempsaco, recovery of income payments from Dempsaco, imposition of a constructive trust over Dempsaco, and compensatory damages arising out of her unjust enrichment claim. These claims, the majority concludes, did not trigger the in terrorem clause in the Trust. The lower courts had a different view (221 AD3d 773 [2d Dept 2023]; 2022 NY Slip Op 34678[U] [Sup Ct, NY County 2022]).
After denying defendant's motion to dismiss [FN1] and permitting discovery to proceed, Supreme Court ruled in defendant's favor on her partial summary judgment motion, made before discovery closed, declaring that "plaintiff is not a member of Dempsaco" and holding that "the plain unambiguous language of the Trust is dispositive," that "Defendants have demonstrated prima facie entitlement to judgment, setting forth competent evidence that plaintiff is not a member of Dempsaco," and that "plaintiff's submissions do not support her efforts to make herself a member of Dempsaco." The court noted that while "the Trust clearly evinces an intent to transfer the Premises to plaintiff, and the court in this motion would have ruled in favor of plaintiff for such disposition," "the issue of the in terrorem clause relating to the income stream has not been decided," and if a determination was made that plaintiff triggered the in terrorem clause, "she will have forfeited her legacies under the Trust, including the transfer of the Premises to her." While plaintiff indicated an intent to pursue an appeal of this ruling, she failed to do so.
During the pendency of the proceedings in Supreme Court, plaintiff filed a petition in Surrogate's Court to compel production of decedent's will, and that court ordered an inquiry under Surrogate's Court Procedure Act (SCPA) § 1401. After defendant's counsel requested a stay of the proceedings and plaintiff's counsel declined to respond, that court issued a stay pending a final decision and order in this action.
Following Supreme Court's ruling that plaintiff was not a member of Dempsaco, that court granted defendant's subsequent motion for summary judgment dismissing plaintiff's remaining causes of action on the basis that plaintiff violated the in terrorem clause and denied plaintiff's motion seeking transfer of the title of the premises and a stream of income in the sum of $350,000 (2022 NY Slip Op 34678[U]). Supreme Court determined that "[i]n clear impertinence to Grantor's words in the Trust, Plaintiff claimed that she had a 50% interest in Dempsaco," that "[i]t cannot be disputed that Plaintiff contested the distribution of the Grantor's 100% interest in Dempsaco to Colangelo under the Trust," and plaintiff "did indeed contest 'any aspect' of the Trust, [*9][] by claiming that she was a 50% member of Dempsaco" (id. at *3). Supreme Court, "[v]iewing the totality of the conduct by the parties, . . . determined as a matter of law that Plaintiff clearly violated the in terrorem clause of the Trust and, consequently, forfeited her legacies thereunder," awarded defendant attorneys' fees, and denied plaintiff's cross-motion as moot (id.). The Appellate Division modified by reversing Supreme Court's award of attorneys' fees to defendant and otherwise affirmed, holding that defendants submitted evidence sufficient to show that "the plaintiff contested the distribution of [decedent's] interest in Dempsaco in violation of the in terrorem clause" (221 AD3d at 775).
A trust instrument "is to be construed as written and the settlor's intention determined solely from the unambiguous language of the instrument itself" (Mercury Bay Boating Club v San Diego Yacht Club, 76 NY2d 256, 267 [1990]). With respect to in terrorem clauses, this Court has explained that while they "are enforceable, they are not favored and must be strictly construed" (Matter of Singer, 13 NY3d 447, 451 [2009] [citations and alteration omitted]). Still, "the paramount consideration in construing these types of clauses is to effectuate the intent of the decedent or grantor and the purpose of the trust" (Matter of Neva M. Strom Irrevocable Trust III, 203 AD3d 1255, 1256 [3d Dept 2022] [citation omitted]). In terrorem clauses may "serve several worthwhile purposes," including "deter[ring] unwarranted challenges to the donor's intent by a disappointed person seeking to gain unjustified enrichment at the expense of others," "prevent[ing] costly litigation that would deplete the estate," and "discourag[ing] a contest directed toward coercing a settlement" (Restatement [Third] of Property [Wills & Don. Trans.] § 8.5b]).
Here, the in terrorem clause in decedent's will is broad and all-encompassing, prohibiting any challenge or contest to the distribution of any of decedent's assets in any way. It applies to "any heir, distributee, beneficiary, agency, organization, or other individual" who "contest[s] any aspect of this Trust, or the distribution of the Grantor's assets pursuant to his Last Will, inter vivos Trust Agreement, beneficiary designations or non-probate beneficiary designations" or who "attempts to set aside, nullify, contest, or void the distribution thereof in any way," and it requires forfeiture of any bequests within those documents. The intent is clear—those who challenge or seek to void the distribution of assets provided for in the Trust or other testamentary documents forfeit their rights to any bequests.
In her complaint, plaintiff challenged the Trust's distribution of the entirety of Dempsaco to defendant ("Defendant . . . erroneously believes that . . . she is the 100% owner of Dempsaco"). The "nature" of plaintiff's claim (see majority op at 13-14) was an assertion of 50% ownership in a company in which she had no ownership interest, pursuant to the Trust or otherwise, and which decedent wholly owned and intended to bequeath to defendant. Even under the strictest possible construction of the in terrorem clause, this was a challenge to the distribution of decedent's assets and an attempt to "void the distribution" of that asset. It was the decedent's intent for defendant to receive his "interest" in Dempsaco and that interest was 100 percent of the company, a fact now beyond dispute. It was also the decedent's intent for any beneficiary of the Trust to be subject to forfeiture should they challenge the distribution of his assets as dictated in the Trust (see e.g. Matter of Neva M. Strom, 203 AD3d at 1257 [beneficiary's pursuit of [*10]discovery in Surrogate's Court over trust assets to which she was not entitled triggered the trust's in terrorem clause and caused her to forfeit disposition thereunder]; Matter of Tumminello v Bolten, 59 AD3d 727, 728 [2d Dept 2009] [petitioner's challenge to Trust was "in direct contravention of the settlor's apparent intention to prevent such actions by including an in terrorem clause"]). By bringing a complaint that challenged the distribution of decedent's property and assets, plaintiff breached the in terrorem clause and so is not entitled to the bequests provided to her in the Trust.
Rather than concede this outcome, the majority concludes that plaintiff merely sought to set the record straight (majority op at 14 [plaintiff's action was "meant to require the Trustee to distribute the Trust in accordance with its stated provisions"]). The argument proceeds as follows: decedent wanted "his interest" in Dempsaco to go into the Trust for distribution to defendant; decedent only had a 50 percent interest in Dempsaco; and therefore by challenging the 100 percent distribution of Dempsaco to defendant that would otherwise have occurred, plaintiff was seeking to enforce decedent's "true" intent (see majority op at 12-13). The problem, of course, is that decedent did in fact have a 100 percent interest, which he intended to transfer to defendant, and with her baseless claim that she owned 50 percent, plaintiff attempted to frustrate his "distributive intent" (majority op at 14). Taken to its logical end, under the majority's approach, a challenger could claim, without any support, that decedent had no interest in any of the trust property, that the trust had no property at all to distribute, and that challenger owned all the trust's property—and then avoid the consequences of an in terrorem clause by claiming the suit was merely an effort to ensure that the grantor's intent was fulfilled. This is not how in terrorem clauses work, nor how they have been enforced (see e.g. Matter of Estate of Peters, 132 AD3d 1250, 1252 [4th Dept 2015] [whether claim to ownership of decedent's business triggered in terrorem clause required resolution of merits of ownership claim]). This approach is also contrary to the Estates, Powers & Trusts Law (see EPTL 3-3.5 [b] ["A condition, designed to prevent a disposition from taking effect in case the will is contested by the beneficiary, is operative despite the presence or absence of probable cause for such contest"]), and the approach reflected in the Restatement (Third), on which the majority elsewhere relies (see Restatement [Third] of Property [Wills & Don. Trans.] § 8.5 [2003] ["If a beneficiary litigates unsuccessfully and then seeks to claim under the donative transfer, the beneficiary suffers the penalty imposed by the transferor for such conduct unless that beneficiary can establish that there was probable cause for instituting the proceeding"]).
More concerning is the confusion in the majority over its approach and what rule applies going forward. The majority attempts to cabin its holding by proposing that "[p]erhaps a claim concerning putative trust property might be so frivolous, so plainly contrary to the grantor's intent, or so based in bad faith as to essentially contest the Trust itself" (majority op at 13). No further information on the scope of any such limiting principle is provided, nor any clarification on how such a limiting principle would operate in conjunction with its "nature not merits" approach (compare majority op at 13 & n 8 [urging consideration of "the nature, and not the merits" of a complaint] with majority op at 13 n 7 ["consider(ing) what plaintiff non-frivolously asserted in her complaint"], 13 n 9, 10 [implying agreement with a probable cause analysis based on the merits of a complaint]). Whether the standard is probable cause, or non-frivolity, or instead just an assessment of the "nature" of a claim over any consideration of its [*11]"merits" remains unanswered. The ability of trial courts to make considered judgments (see majority op at 13 n 9) will be hampered by the lack of clarity from this Court as to what they should consider.
Plaintiff's challenge to the distribution of decedent's interest in Dempsaco alone triggered the in terrorem clause, but plaintiff's other claims have the same effect. In her complaint, plaintiff demanded "any amounts due and owing to Plaintiff" and "the recoupment of all income payments" from Dempsaco, alleged that defendant did not have "unfettered, and sole discretion . . . to determine whether Dempsaco must pay Plaintiff the income promised to her in the Trust," and demanded the full amount of $350,000. These claims constitute direct challenges to the Trust's distribution of decedent's assets and attempts to void such distribution, in violation of the clear terms of the in terrorem clause.
This presents a problem for the majority. Addressing that issue here would mean plaintiff loses and forfeits the home. Remittal of the issue to Supreme Court would inevitably lead to the same result. To avoid that outcome, the majority creates a new "conceded and foreclosed" procedural rule in New York law.
A review of the record shows the issue is squarely presented here. As the majority notes, defendant has raised the argument that the filing of the complaint, and specifically its demand for the income stream, triggered the in terrorem clause from the start of this litigation, and the parties' conduct throughout reflects this. Plaintiff's cross-motion for summary judgment contains assertions that she did not trigger the in terrorem clause by demanding the $350,000, acknowledges—as does the majority (see majority op at 10-11 n 6)—that defendant made at least "a passing reference" to that argument in her motion papers, and in fact accuses defendant of belatedly raising an argument concerning the claim to 50% of Dempsaco in light of her previous focus on plaintiff's claim to the full amount of the stream of income. Even plaintiff does not assume the argument is abandoned. But under the majority's new standard, it has been. No guidance is provided on what amount of "reference," beyond "passing," is now required to preserve an argument for appeal. Understandably, this approach was rejected by Supreme Court in finding a violation of the in terrorem clause based on "the totality of the conduct by the parties" (2022 NY Slip Op 34678[U] [Sup Ct, Westchester County 2023]).
From an internally inconsistent assessment of the record, the majority moves on to its novel "conceded and foreclosed" legal theory. "In other contexts," the majority asserts, "we have held that a failure to contest an issue on summary judgment may amount to a concession" (majority op at 10-11 n 6). The support for this analogy is one case that stands only for the basic concept applicable to summary judgment motions that a failure to contest factual assertions in response to a summary judgment motion results in a finding that no material issue of fact exists (see majority op at 10-11 n 6, citing Kuehne & Nagel v Baiden, 36 NY2d 539, 544 [1975]), and a "cf" citation to a 2013 Appellate Division case holding that defendants waived an affirmative defense by failing to raise it (id., citing New York Commercial Bank v J. Realty F Rockaway, Ltd., 108 AD3d 756, 757 [2d Dept 2013]). Parenthetical language describing the cited cases is understandably absent, as the relevance of these standard procedural principles—that uncontested facts do not raise a triable issue of fact or affirmative defenses may be waived—on whether a court can consider the entirety of plaintiff's complaint when [*12]resolving defendant's motion for summary judgment that turns on the content of that complaint is hard to discern. Yet the majority concludes based on that legal authority that "[t]his case is similar" to those holdings (majority op at 10-11 n 6).
Having wrung this "concession" from defendant, the majority must "foreclose[]" any consideration of the issue "here and on remittal" (id.). The support for deeming the issue of whether the claim for the stream of income violated the in terrorem clause "foreclosed" rests on another "cf" citation (id.), this time to a case from this Court holding that, "under the peculiar circumstances of this case the failure to timely serve and file a notice of claim" against a municipality "was not a bar to the plaintiff's recovery" because the defendant never raised the notice issue during the entire course of the six-year litigation (Salesian Socy. v Village of Ellenville, 41 NY2d 521, 522, 524-525 [1977] [emphasis added]). That litigation included a trial on the merits and a stipulation between the parties that specifically defined the disputed issues (id. at 524). The "waiver" there was not contested; the issue was rather whether a lawyer for the municipality could do so and if, in the face of that conduct, the Appellate Division could nevertheless sua sponte reach the issue (id. at 525-526). There is nothing to "compare" between Salesian and this case. Yet the majority concludes that it follows from that "cf" citation that defendant "chose to forgo" the stream of income argument and therefore is "foreclosed from pursuing that argument here and on remittal" (majority op at 10-11 n 6). And so, with one citation to a case on the obvious consequences of failing to contest facts in opposing summary judgment and two other irrelevant "cf" citations, only one from this Court, the majority has created a new "conceded and foreclosed" procedural rule.
While maintaining that any claim relating to the triggering of the in terrorem clause by the stream of income challenge has been abandoned, the majority nevertheless remits to Supreme Court "resolution of plaintiff's second cause of action" (majority op at 18), which seeks a "judgment declaring that Plaintiff is a 50% member of Dempsaco and is entitled to the income stream." With Supreme Court having already decided that plaintiff is not a 50% member of Dempsaco, but having found in its decision on the motion to dismiss that there were "disputed issues regarding the construction of the Trust relating to the distribution of the $350,000," that leaves open the merits of plaintiff's claim of entitlement to that money [FN2]. It would appear to follow that, on remittal, as Supreme Court determines whether plaintiff is entitled to the total amount of the stream of income or whether the language is precatory, that court can also consider whether plaintiff's claim to that money triggered the in terrorem clause.
In the end, the majority seems to be striving for an "equitable" result based on defendant's actions and the prospect of plaintiff losing the home to which she would have been entitled had she not brought this suit. Plaintiff did, however, have an avenue for seeking to enforce any rights she believed she had. In a Surrogate's Court proceeding, plaintiff could compel production of the will, litigate construction of the [*13]will, and request a deposition of decedent's attorney (the exact discovery she sought in this action), all under the statutory protections of the EPTL and the SCPA [FN3]. Plaintiff chose instead to initiate this lawsuit (and then chose, in the middle of motion practice, to also pursue these options by filing in Surrogate's Court). Under these circumstances, "[t]he only reasonable inference to be drawn from the record is that [plaintiff] neither sought the protections of, nor pursued [her] claims pursuant to, SCPA 1404, or EPTL 3-3.5 (b) (3) (D), but rather charted a course of litigation from the outset without regard for the consequences" (Matter of Ellis, 252 AD2d 118, 133 [2d Dept 1998]). The risk, if that litigation strategy failed, was forfeiture, and that risk was realized here. Changing New York practice rules and unsettling our law on trusts is a high price to pay for saving plaintiff from the consequences of her actions.
Order insofar as appealed from modified, without costs, by denying defendants' motion for summary judgment dismissing the remainder of the complaint and granting plaintiff's cross-motion for summary judgment in accordance with the opinion herein and, as so modified, affirmed. Opinion by Judge Rivera. Chief Judge Wilson and Judges Troutman and Halligan concur. Judge Garcia dissents and votes to affirm in an opinion, in which Judges Singas and Cannataro concur.
Decided April 17, 2025

Footnotes

Footnote 1: The clause in the Trust also provided for damages as follows: "Any challenger shall also be charged with all costs, legal fees and expenses incurred by any party as a result of the challenger's contest, including costs, legal fees, and expenses incurred by any party for depositions of any witness to the execution of such documents."

Footnote 2: Counsel had drafted Dempsey's will and trust agreement, which were executed at the same time.
Footnote 3: The proposed release stated, in relevant part, that plaintiff "[a]grees to indemnify and hold harmless CRISSY COLANGELO, individually, as Trustee, and as the nominated Executrix of the Estate of Donald P. Dempsey, to the extent of the aggregate fair market value on the date or dates of distribution of all property of the trust estate and the estate now or previously distributed to KRISTINE M.CARLSON, from and against any and all claims or liabilities of any nature whatsoever which may be asserted by anyone against CRISSY COLANGELO, individually, as Trustee and as the nominated Executrix of the Estate of Donald P. Dempsey, arising out of or in connection with her acts, transactions, or omissions (if any) in the investment or administration of said trust or estate or the distribution of the Trust estate or the Estate of Donald P. Dempsey."

Footnote 4: Supreme Court adjourned proceedings in the case pending the appeal.
Footnote 5: Plaintiff's argument that she lacked standing to challenge the Trust based on her 50% claim to Dempsaco was not raised below and thus is not preserved for our review (see Bingham v New York City Tr. Auth., 99 NY2d 355, 359 [2003]).

Footnote 6: In their pre-answer motion to dismiss, defendants argued, among other things, that plaintiff triggered the in terrorem clause by asserting that the Trust language concerning the income stream was mandatory, rather than discretionary. Supreme Court held that factual issues remained concerning Dempsey's intent, precluding judgment as a matter of law. After that decision, but before discovery concluded, the parties cross-moved for summary judgment. In their motion papers, defendants raised no argument that the income-stream demand triggered the in terrorem clause. In ruling on the initial motions, Supreme Court did not resolve the issue, observing that "neither of the parties sought summary judgment" on it. After discovery concluded, the parties again cross-moved for summary judgment. The evidence produced—including the Trust instrument, Dempsey's will, testimony from the attorney who drafted the Trust and the will, and that attorney's notes—plainly bore upon Dempsey's intent concerning the income stream. Yet in seeking summary judgment, defendants again declined to assert their initial position. In her motion papers, plaintiff asserted: "Defendants have all but abandoned the baseless argument that the language was precatory and triggered the in terrorem clause as it is only mentioned as a passing reference in their brief." Defendants, in turn, argued that plaintiff had not carried her burden to establish that the grantor's intent was to provide plaintiff with a mandatory income stream. They also maintained that the income-stream language in the Trust was merely precatory. However, defendants once again did not contend that plaintiff's income demand had triggered the in terrorem clause. In granting summary judgment for defendants, the court again did not determine the effect, if any, of plaintiff's income-stream request.
In other contexts, we have held that failure to contest an issue on summary judgment may amount to a concession (see Kuehne & Nagel, Inc. v Baiden, 36 NY2d 539, 544 [1975]; cf. New York Commercial Bank v J. Realty F Rockaway, Ltd., 108 AD3d 756, 757 [2d Dept 2013]). This case is similar. That defendants belatedly attempted to advance their position before the Appellate Division does not change matters, for both Supreme Court and plaintiff alike were entitled to rely upon defendants' earlier litigation conduct (cf. Salesian Soc., Inc. v Vil. of Ellenville, 41 NY2d 521, 525 [1977])). Under the circumstances presented here, we conclude that defendants chose to forgo any argument that plaintiff's request triggered the in terrorem clause. They are therefore foreclosed from pursuing that argument here and on remittal.
Footnote 7: We do not disturb Supreme Court's holding that plaintiff had no ownership interest in Dempsaco and we nowhere suggest that "decedent only had a 50 percent interest in Dempsaco" (dissenting op at 7). Rather, we consider what plaintiff non-frivolously asserted in her complaint.
Footnote 8: Contrary to the dissent, plaintiff's complaint did not include a self-contradictory "assertion of 50% ownership in a company in which she had no ownership interest" (dissenting op at 6). That plaintiff in fact had no ownership interest in Dempsaco was determined only through litigation. By confusing the nature of plaintiff's claim with its merits, the dissent misconstrues the in terrorem clause. The dissent's proposed analysis would also needlessly burden courts and litigants: a party might assert a highly plausible claim to property ultimately deemed by a court to be part of the trust corpus, only to find out after trial that their claim triggered an in terrorem clause. Focusing on the nature of the claim, by contrast, compels fewer but surer determinations that a beneficiary has been dispossessed. This inquiry better reflects the requirement that in terrorem clauses be strictly construed.
Footnote 9: Of course, courts are accustomed to determining whether legal filings are frivolous (see e.g., Maroulis v 64th St. Third Ave. Assoc., 77 NY2d 831 [1991]). We do not share the dissent's concern that courts will be unable to make such judgments when considering the effects of in terrorem clauses.

Footnote 10: The dissent is mistaken that our approach is contrary to the Estates, Powers & Trusts Law and to the approach of the Restatement (Third) of Property (see dissenting op at 8, citing EPTL 3-3.5 [b] and Restatement [Third] of Property [Wills & Don. Trans.] § 8.5). The EPTL—which in this respect addresses only wills—does not define when a beneficiary "contest[s]" a testamentary instrument. The Restatement likewise does not specify when "a proceeding challeng[es] the validity" of an instrument. This case concerns that antecedent issue: whether plaintiff's action "contest[ed] any aspect" of the Trust. Moreover, the Restatement proposes a safe harbor when "probable cause existed for instituting the proceeding." This proposal largely tracks our analysis.
Footnote 11: To the extent defendant argues that plaintiff's only recourse was to commence this action in Surrogate's Court, defendant fails to explain how changing the venue affects the nature of the claim. Either plaintiff challenged the grantor's distributive plan or she sought to effectuate it. For the reasons we discuss, plaintiff does not contest the Trust. Notably, upon a trustee's application to resign, Supreme Court may discharge a trustee and upon application of any person interested in the trust, the court may suspend or remove a trustee for, among other things, violation of their trust (EPTL 7-2.6 [a]). Thus, there is no legal bar to plaintiff's Supreme Court action given her claims that defendant as Trustee acted in violation of settled public policy by demanding plaintiff sign the indemnification agreement waiving all her rights under the Trust, in exchange for defendant's transfer of the Premises.

Footnote 12: We take no position on this matter but clarify that plaintiff is not barred from pursuing this argument upon remittal.

Footnote 1: Defendants moved to dismiss on more than just the ground that plaintiff's assertion that the payment of the income stream was mandatory triggered the Trust's in terrorem clause (but see majority op at 6), including on the basis that the claim for 50% of Dempsaco should be dismissed because decedent "bequeathed all of his interest in Dempsaco to" defendant. With respect to the income stream language, the court determined that there were disputed issues that could not be resolved on a motion to dismiss concerning whether that provision was intended not to be "pre[c]atory words expressing desire or hope, but to give an express, binding direction."

Footnote 2: Confusion over what remains on remittal is understandable—the majority declares that "Supreme Court erroneously held that plaintiff's public policy claim 'is trumped by Plaintiff's disregard for Grantor's last wishes,' " while at the same time adding that it "take[s] no position on this matter but clarif[ies] that plaintiff is not barred from pursuing this argument upon remittal" (majority op at 17 n 12).

Footnote 3: EPTL § 3-3.5 (b) protects certain conduct from the consequences of an in terrorem clause, including "[t]he institution of . . . a proceeding for the construction of a will or any provision thereof" and examinations pursuant to SCPA 1404. The majority does not appear to understand why this action, and not such a proceeding in Surrogate's Court under the EPTL safe harbor provisions, triggers the in terrorem clause (see majority op at 14 n 11 ["defendant fails to explain how changing the venue affects the nature of the claim"]).